Argued September 14, affirmed October 7, 1970

WALLENDER, *Respondent, v.* MICHAS, *Appellant.*

475 P2d 72

*Carrell F. Bradley,* Hillsboro, argued the cause for appellant. With him on the briefs were Joe Bailey and Schwenn, Bradley & Batchelor, Hillsboro.

*Mervin W. Brink,* Hillsboro, argued the cause for respondent. With him on the brief were Brink & Moore, Hillsboro.

Before O'Connell, Chief Justice, and McAllister, Holman* and Tongue, Justices.

TONGUE, J.

This is an action for damages for personal injuries resulting from an automobile accident. Defendant appeals from a judgment for plaintiff in the sum of $4,800.

Defendant assigns as error the failure of the trial judge to strike testimony by one of plaintiff's doctors that her alleged difficulty in controlling her left hand was a "conversion hysterical response." In support of this assignment defendant contends: (1) Plaintiff's complaint only alleged "mental anguish," which did "not apprise defendant" that plaintiff suffered a "conversion hysterical response;" (2) plaintiff's doctor did "not establish as a medical probability" that such a condition was caused by the accident; and (3) the doctor who testified on this subject found no objective symptoms, but based his testimony on "statements and subjective symptoms related to the physician by the patient," which he could not properly do for the reason that he was not her "treating doctor."[1]

Plaintiff's complaint did not allege that she suffered from a "conversion hysterical response," but alleged that plaintiff suffered face lacerations and scars and "strain of the muscles, tissues and ligaments about the cervical spine," and that "these injuries have

---

* Holman, J., did not participate in this decision.

[1] For that same reason, defendant also objected to such testimony when originally offered, as well as to the admission in evidence of hospital records in which the same "history" was recorded.

caused plaintiff pain, suffering, shock and mental anguish." At the conclusion of the testimony plaintiff moved to amend her complaint by adding, after the word "anguish," the words "and conversion hysteria."

Defendant objected to the amendment on the ground that "there is no evidence that this conversion hysteria * * * was in any way related to the injuries she received in the accident" and that "furthermore, that evidence was a complete surprise to me." The trial judge then denied the motion to amend, but held that the allegation of "mental anguish is sufficient" to permit plaintiff's contention of "conversion hysteria" to go to the jury.

The record shows that plaintiff's attorney, in his opening statement to the jury at the beginning of the trial, in describing her injuries, stated, among other things, that "her left arm and hand tingled and involuntarily opened from time to time" and stated that a neurosurgeon would testify that this problem was compatible with soft tissue damage in the cervical area of the spine. Defendant's attorney, in his opening statement, then told the jury that although plaintiff complained to the neurosurgeon that she was having "this neck complaint and arm complaint," he could find "nothing wrong with her other than what she said" and that defendant's doctor (who had also examined plaintiff and had been told by her of the same difficulties) would testify that he had not found "anything of a substantial nature to justify the complaints she is having or that she complains she is having."

Plaintiff then offered the testimony of the neurosurgeon that plaintiff's inability to control the use of her left hand was a "conversion hysterical re-

sponse." No objection was made at that time, however, on the ground of surprise or that such testimony was not proper under the allegations of the complaint. Instead, defendant objected only upon the ground that the neurosurgeon could not base such findings upon what plaintiff told him about her subjective symptoms and complaints because he was not her "treating doctor."

Thus, if the neurosurgeon was a "treating doctor," the trial judge did not err in overruling defendant's objection to the testimony of the neurosurgeon. Similarly, if there was sufficient testimony that plaintiff's problems with her left arm were caused by the accident, it would also follow that it would have been entirely proper for the trial judge to permit plaintiff to amend her complaint to conform to such proof—there being no proper basis for objection that defendant was surprised by such testimony under the facts of this case. Cf. *Morrill v. Rountree*, 242 Or 320, 325, 408 P2d 932.

We need not now decide whether, as defendant now contends, a "conversion hysterical response" is a physical impairment, to be distinguished from "pain and suffering" as elements of "mental anguish," or whether, as plaintiff contends, a "conversion hysterical response" is simply "another manifestation of pain, suffering and mental anguish."

In any event, since no objection was made when the testimony of the neurosurgeon was offered in evidence upon the ground that such testimony was not within the allegations of the complaint, defendant was not entitled, at the conclusion of the trial, to strike such testimony from the record on that ground. Cf. *Timeus v. Campbell*, 254 Or 641, 460 P2d 350 (1970).

This is in accord with the general rule that where an objection to evidence is made on one ground, all other possible grounds for objection are waived (*Miller v. Lillard*, 228 Or 202, 210, 364 P2d 766 (1961)), as well as the general rule that a motion to strike improper testimony must be made as soon as the ground for such a motion is disclosed. (*Derrick v. Portland Eye, Ear, Nose & Throat Hospital*, 105 Or 90, 100, 209 P 344 (1922)).

■ Furthermore, for these same reasons, and under these circumstances, since defendant had not objected to the testimony of the neurosurgeon on the subject of "conversion hysterical response" as outside the allegations of the complaint (or on the ground of "surprise") and since defendant also had no proper basis for objecting to an amendment of the complaint to conform to such proof, it also follows that defendant cannot now claim to have been prejudiced by the submission to the jury of plaintiff's contention that she suffered from a "conversion hysterical response" as the result of the accident under the allegations of plaintiff's complaint without the amendment which defendant had opposed successfully, but without proper grounds.

Next, to consider defendant's contention that the testimony did not establish a "medical probability" that the condition described as a "conversion hysterical response" was caused by the accident.

It is true, as defendant contends, that identifying the cause of such a condition may be difficult and that there may be many possible causes. It is also true that plaintiff's neurosurgeon testified, at first, to no more than that plaintiff's problems with her left hand

were "compatible" with soft tissue injury in the cervical area. Later, however, he testified that:

"\* \* \* it was my conclusion that she had a cervical soft tissue injury from which she had made recovery and that the complaints referable to the left hand were manifestations of a conversion hysterical response."

He went on to explain that "a conversion hysterical response is an unintentional, persistent, non-organic, basically emotional manifestation of some physical or emotional strain which has precipitated this pattern of reaction of the part of the patient."

■ We hold that this testimony was sufficient to make it a jury question whether plaintiff's difficulty with her left hand, as described by the testimony, was caused by the accident.

Finally, to consider defendant's contention that plaintiff's neurosurgeon could not properly testify to an opinion based upon what plaintiff told him about the accident and the injuries, for the reason that he was not a "treating doctor."

■ There was testimony that when plaintiff was sent to the neurosurgeon he was instructed to prepare a report for plaintiff's attorney and that one of his records indicated that plaintiff had been referred by her attorney to the neurosurgeon. There was also testimony, however, that plaintiff was referred to the neurosurgeon by her original doctor when informed by plaintiff of the symptoms relating to her left arm for diagnosis and treatment of those symptoms. In addition, the neurosurgeon testified that he made various tests in an effort to determine the cause of that condition, including hospitalization for the purpose of a myelogram, and that for such purposes he became in fact "her treating doctor."

■ Based upon such testimony it was not error for the trial court to consider plaintiff's neurosurgeon to be one of her "treating doctors" and, on that basis, to permit him to express his conclusions based upon the "history" of the case, as told to him by plaintiff, and upon her "subjective symptoms" as she also described them to him. Whether plaintiff told the truth to the neurologist and whether his opinion, based upon what she told him, was reliable or not were questions to be decided by the jury.

Finding no error, the judgment of the trial court must be affirmed.

Affirmed.