Argued and submitted July 9, 1991, defendant's conviction for aggravated murder and sentence of death affirmed July 9, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES MICHAEL ISOM,
*Appellant.*

## (CC C86-05-32246; SC S36612)

837 P2d 491

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause and filed the briefs for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jas. Adams, Assistant Attorney General, Salem.

GILLETTE, J.

Fadeley, J., dissented and filed an opinion.

## GILLETTE, J.

This is an automatic and direct review of a judgment of conviction of aggravated murder and sentence of death. *Former* ORS 163.150(1)(f) (1987) (now ORS 163.150(1)(g)). It is the second time the case has been before us. On the first appeal, we reversed defendant's conviction due to error committed at trial. *See State v. Isom*, 306 Or 587, 761 P2d 524 (1988). After retrial, defendant once again seeks reversal of his conviction for aggravated murder. Alternatively, he asks this court to vacate his sentence of death. We affirm both defendant's conviction of aggravated murder and his sentence of death.

The jury found defendant guilty. We therefore view the evidence in the light most favorable to the state. *State v. Rose*, 311 Or 274, 276, 810 P2d 839 (1991).

On May 13, 1986, defendant, a prisoner in a Washington state prison, was transferred to a work release center in Seattle, Washington. Later that day, defendant was granted a pass to leave the release center, provided that he return by 5 p.m. He did not return as required.

Several days later, defendant rented a room at the Continental Motel in Portland under the name James Austin. He met Barbara Maher in a Portland bar, and they later returned to his motel room. The next morning, defendant checked out of the motel. Later that day, Maher's body, stabbed to death, was discovered in the bathtub of defendant's room.

Defendant was arrested and charged with aggravated murder. ORS 163.095(2)(f).[1] After a bifurcated trial before a jury, he was found guilty of aggravated murder and sentenced to death.

---

[1] ORS 163.095 provides, in part:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 [intentional murder] which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2)(f) The murder was committed after the defendant had escaped from a state, county or municipal penal or correctional facility and before the defendant had been returned to the custody of the facility."

Defendant's numerous challenges to his conviction and sentence of death fall into three categories, and we address them by category.

## CHALLENGES RELATING TO ORS 163.095(2)(f)

### 1. Change in the law.

Defendant contends that the aggravating factor with which he was charged, ORS 163.095(2)(f), is facially unconstitutional under Article I, sections 16 (criminal penalties must be proportional to the offense), 20 (equal privileges and immunities), and 21 (prohibition against *ex post facto* laws) of the Oregon Constitution, as well as under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and is, in any event, unconstitutional as applied to him in this case. We first address the constitutionality of ORS 163.095(2)(f) as applied to defendant.

Defendant argues that, as a matter of statutory construction, he was entitled to the benefit of a 1989 amendment to the Oregon Criminal Code that made failure to return on a pass from a work release center a misdemeanor, unauthorized departure, rather than the felony of escape.[2] Defendant contends that, if his failure to return to the Washington release center did not constitute an escape under current Oregon law, he could not have been convicted of violating ORS 163.095(2)(f).

Defendant claims that he has a right to the benefit of a change in law regarding the punishment that he may receive based on his conviction.[3] Even assuming that

---

[2] In 1986, at the time of Maher's murder, ORS 162.135(4) defined "escape" as follows:

" 'Escape' means the unlawful departure, including failure to return to custody *after temporary leave granted for a specific purpose or limited period*, of a person from custody or a correctional facility * * *."

(Emphasis supplied.) At the time defendant murdered the victim, escape was a felony. ORS 162.155(1)(c) and (2). In 1989, the legislature amended ORS 162.135(4) to remove the reference to "failure to return to custody after temporary leave for a specific purpose or limited period." At the same time, the legislature inserted comparable language in the definition of "unauthorized departure." ORS 162.135(7) (1989). *See* Or Laws 1989, ch 790, § 53. Unauthorized departure is a misdemeanor. ORS 162.175.

[3] Defendant's brief is unclear as to the authority that permits him to benefit from a change in law. He makes that argument in the context of his broader argument that his conviction "is unconstitutional as applied to the facts of this

defendant would not now be chargeable with aggravated murder under ORS 163.095(2)(f), his argument is not well taken. "The power to declare what punishment may be assessed against those convicted of crime is not a judicial, but a legislative, power, controlled only by the provisions of the Constitution." *State v. Smith*, 128 Or 515, 524, 273 P 323 (1929). Because the power of punishment is legislative, when the legislature changes the punishment for a crime, Oregon courts must apply the sentence that the legislature intended. The reason is found in ORS 161.035(4), the savings clause to Oregon's Criminal Code of 1971, which provides:

> "When all or part of a criminal statute is amended or repealed, the criminal statute or part thereof so amended or repealed remains in force for the purpose of authorizing the accusation, prosecution, conviction and punishment of a person who violated the statute or part thereof before the effective date of the amending or repealing Act."

■ It is clear from ORS 161.035(4) that the legislature intends that Oregon courts sentence criminal defendants under the statutory scheme in force when a particular criminal act was committed. *See also State v. Pirkey*, 203 Or 697, 702, 281 P2d 698 (1955), *overruled on different grounds by City of Klamath Falls v. Winters*, 289 Or 757, 781, 619 P2d 217 (1980) ("the statutory provision specifying the punishment for the doing of specific acts constitutes an integral part of the crime itself"); *State v. Moore*, 192 Or 39, 45, 233 P2d 253 (1951) (savings clauses in criminal codes "are declarative of a continuing policy of the state that the repeal of any statute shall not release or extinguish any liability incurred or affect any right accrued"); *State v. Twilleager*, 18 Or App 182, 524 P2d 567 (1974) (holding that ORS 161.035 required the court not to abate the punishment of the defendant whose sentence was diminished by a later amendment).

■ To permit defendant to be sentenced under the post-1989 amendment to the criminal code for a criminal act that occurred before the change in the law would have the effect of reducing the prescribed punishment. This would

---

case." We nonetheless will address defendant's argument in the methodology long-established by this court — first under Oregon statutory law, then under the Oregon Constitution, and finally under the United States Constitution. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (setting forth methodology).

violate the legislative directive of ORS 161.035(4) that a criminal defendant face the same possible sentence that was in effect when the defendant committed the criminal acts for which the defendant is to be punished.[4]

■ We also hold that ORS 163.095(2)(f) does not violate any state or federal constitutional provision on which defendant relies. This is not a case of an *ex post facto* law increasing the punishment of a criminal defendant. *See State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988) ("Generally speaking, *ex post facto* laws punish acts that were legal at the time they occurred, change the punishment for those acts, or deprive the defendant of a defense for those acts."). Here, the trial court applied the statutory scheme in effect at the time defendant committed the murder. We hold, therefore, that ORS 163.095(2)(f) is constitutional, as applied to defendant, under both the state and federal constitutions and that the trial court did not err in refusing to sentence defendant under the post-1989 statutory scheme.

*2. The definition of "state" in ORS 163.095(2)(f).*

Defendant next contends that ORS 163.095(2)(f) does not apply in his case, because he was an escapee from a Washington work release center and therefore did not escape from a "state" correctional facility, *i.e.*, an *Oregon* facility, as required by defendant's interpretation of ORS 163.095(2)(f).[5] The thrust of defendant's argument is that "[t]he statute could have said, 'from any correctional facility' or 'from a correctional facility of any state, county or municipality.' "

The state responds that ORS 163.095(2)(f) specifically includes defendants on escape from *"a* state"

---

[4] Because this legislative directive is clear and the issue is one for the legislature to decide, there is no occasion for this court to consider the principle of "lenity" that is sometimes followed when legislative intent is not clear. *See, e.g., State v. Welch*, 264 Or 388, 393, 505 P2d 910 (1973) (discussing "principle of lenity").

[5] Defendant acknowledges in his appellant's brief that he was "considered an escapee under Washington law and subject to a felony charge of escape." In his reply brief, which defendant submitted *pro se*, defendant states, "I * * * have not conceded or agreed with the claim made by the public defender's office that I was on escape from a correctional facility, and this court should take note of that fact." We do take note; we also hold that the legal proposition in the defendant's original brief is correct. Under RCW 72.65.070, defendant was on "escape" status, a felony under Washington law.

correctional facility; there is no reference to *"this"* state which would, the state argues, signify a legislative intent that the subsection apply only to Oregon facilities. "That language, on its face, includes other states, including Washington."

■ We hold that a "state * * * correctional facility" in ORS 163.095(2)(f) refers to a state correctional facility in any state, not just to one in the State of Oregon. In addition to the statutory language, which is reasonably clear,[6] evidence of the legislature's intent as to the scope of "state" may be derived from the context of the statute.[7] ORS 163.095(2)(f) is an aggravating factor — a circumstance that elevates intentional murder to aggravated murder and thereby makes a defendant eligible to receive the death penalty. That aggravating factor is the escape status of the defendant. The crucial element of ORS 163.095(2)(f) is whether or not the defendant committed the murder while an escapee. For the purpose of ORS 163.095(2)(f), it is not pertinent in which state the defendant escaped from a correctional institution; there is no suggestion that the legislature thought (or had reason to think) that an escapee from an institution in one state would be either more or less dangerous than would an escapee from an institution in another state. The statute covered escapees like defendant.

*3. Vagueness.*

■ Defendant next argues that ORS 163.095(2)(f) is facially unconstitutional because of vagueness — *i.e.*, that the statute invites a standardless and unequal application of the law, in violation of Article I, sections 20 and 21, of the Oregon Constitution, and the Due Process Clause of the Fourteenth

---

[6] We are instructed by the Oregon Criminal Code itself as to how we are to construe its provisions. ORS 161.025(2) states:

"The rule that a penal statute is to be strictly construed shall not apply to [the Oregon Criminal Code], or any of its provisions. [The Code] shall be construed according to the fair import of its terms, to promote justice and to effect the purposes stated in subsection (1) of this section."

[7] There is no helpful legislative history. Subsection (f) was added to ORS 163.095(2) by a measure that was enacted in the closing days of the 1981 legislative session. The subsection was part of additions made by a conference committee to a bill, SB 526, that originally dealt with another topic of the criminal law. There is no record of any discussion or debate concerning the subsection.

Amendment to the United States Constitution.[8] In *State v. Farrar*, 309 Or 132, 786 P2d 161 (1990), this court summarized Oregon and federal law applicable to a vagueness challenge to the Oregon aggravated murder statute. In that case, the defendant invoked, among others, the same constitutional provisions that are invoked by defendant here, to challenge ORS 163.095(2)(d) and (2)(e) as unconstitutionally vague.[9] This court held that ORS 163.095(2)(d) and (2)(e) were not vague, because "[t]hey do not present an unconstitutional risk under state or federal law of *ad hoc* or *ex post facto* application." 309 Or at 183.

We hold that ORS 163.095(2)(f) is likewise not unconstitutionally vague under Article I, sections 20 and 21, and the federal due process clause.[10] ORS 163.095(2)(f) is "sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties." *State v. Farrar, supra,* 309 Or at 182 (quoting *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985)). Moreover, ORS 163.095(2)(f) does not "permit a judge or jury

---

[8] Article I, section 20, of the Oregon Constitution, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 21, provides:

"No *ex-post facto* law * * * shall ever be passed * * *."

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides:

"No State shall make or enforce any law which shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

[9] As with ORS 163.095(2)(f), ORS 163.095(2)(d) and (2)(e) are aggravating factors contained in Oregon's aggravated murder statute. Aggravating factors are those circumstances under which a murder is accompanied by or committed. ORS 163.095(2)(d) provides:

"Notwithstanding ORS 163.115(1)(b) [the felony murder rule], the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b)."

ORS 163.095(2)(e) provides:

"The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime."

[10] In *State v. Farrar*, 309 Or 132, 184-85, 786 P2d 161 (1990), this court held that two aggravating factors in Oregon's aggravated murder statute, ORS 163.095(2)(d) and (2)(e), were not unconstitutionally vague under the Eighth Amendment to the United States Constitution. Defendant did not raise an Eighth Amendment claim of vagueness here. We therefore do not address that issue.

to exercise uncontrolled discretion in punishing" a defendant. *Id.* The statute is clear − a person who intentionally murders, after he or she escapes from a state correctional facility and before he or she is returned, commits aggravated murder. No terms in ORS 163.095(2)(f) are ambiguous. The *scope* of one term requires definition, but (as we today hold) the scope includes persons having defendant's status as an escapee from any state correctional facility. The statute presents no "unconstitutional risk under state or federal law of *ad hoc* or *ex post facto* application." *State v. Farrar, supra,* 309 Or at 183.

Defendant argues that "the legislature's failure to more specifically define the type of escape and type of murder that would fall within the statute creates the vagueness problem. A reasonable interpretation of the statute would limit it to murders committed to facilitate a defendant's flight from custody." Defendant claims that ORS 163.095(2)(f) "does not distinguish the heinous crime of murder to avoid rearrest from murder unrelated to the initial escape or rearrest."

Defendant's argument is, in essence, a critique of the policy choice that the legislature made in enacting ORS 163.095(2)(f). However, the fact that the legislature *could* have limited ORS 163.095(2)(f) to murders committed to "facilitate a defendant's flight from custody" says nothing about whether that statute fails to "identify what [it] prohibits." *State v. Farrar, supra,* 309 Or at 183. The statute is not impermissibly vague.

*4. Disproportionality.*

Defendant argues in the alternative that the combination of aggravated murder while an escapee, ORS 163.095(2)(f), and the sentencing provisions of ORS 163.105 are unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution.[11] Under the statute, a defendant may receive the death penalty based solely on that defendant's status as an escapee when the defendant commits an intentional murder; the statute does not require that

---

[11] Article I, section 16, of the Oregon Constitution provides, in part:

"[A]ll penalties shall be proportioned to the offense."

the murder be *related to* the escape.[12] Defendant claims that a "person who is attempting to escape is inherently more dangerous than a person who has already escaped. Therefore, a greater penalty for a murder committed after an escape than for a murder committed during an escape is disproportionate to the offense."

Defendant relies on this court's holdings in *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981), and *Cannon v. Gladden*, 203 Or 629, 281 P2d 233 (1955). Those cases, however, do not support defendant's contention here. Each of those cases concerned a situation in which, due to definitional peculiarities, a *lesser included offense* carried a greater penalty than the principal offense. That is not this situation. Defendant's view, that a person in the process of escaping is more dangerous than a defendant who already has escaped, is simply defendant's opinion. The problem for defendant is that the legislature apparently had a different opinion, *i.e.*, it believed that murders intentionally committed by escapees, whether *during or after* the escape, pose a considerable threat to the safety and peace of mind of the general populace. The legislature has chosen to subject all such persons to the maximum potential penalty. Defendant's opinion makes sense, but so does that which we attribute to the legislature. There was a rational basis for the legislature to conclude that both classes of escapees are dangerous.

■ In addition, defendant argues that the statutory scheme is disproportionate, because certain classes of escapees are omitted from the aggravated murder statute. Defendant first contends that the aggravated murder statute would not apply to a single prisoner who, while escaping from a correctional facility, encounters an ordinary citizen and kills him with his bare hands. The reasoning, argues defendant, is that that prisoner's conduct would not constitute escape in the first degree, ORS 162.165, and, therefore, would not subject that prisoner to aggravated murder under ORS 163.095(2)(d) (the felony murder rule that includes murder

---

[12] By way of illustration, defendant states that ORS 163.095(2)(f) "would apply to a person incarcerated in a county jail on a charge of driving while suspended who did not return from a pass and killed his wife after a lover's quarrel. The fact that the defendant was on escape status would have no rational relationship to the crime of aggravated murder."

committed in the course of and in the furtherance of first degree escape).[13] Defendant believes that such a difference in potential sentences between that of a hypothetical prisoner and a person in defendant's position is so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper. *See Cannon v. Gladden, supra,* 203 Or at 632 (setting that standard for holding that a sentence is disproportionate to the offense). Defendant argues that the same shock to the moral sense is shown by the fact that ORS 163.095(2)(f) omits persons escaped from a federal prison.

We reject defendant's arguments. First, all escape-related murders are included in the aggravated murder statute, under either subsection (2)(b) or subsection (2)(f). The reason is that a defendant, whether one confined in a correctional facility or one who escapes, is at all times, for the purposes of the Criminal Code of 1971, either confined or escaped; there is no in-between category. *See generally* Oregon Criminal Code of 1971, Commentary to ORS 162.135 (definition of "escape") (stating that "an inmate is considered confined within a 'correctional facility' from time of original commitment until lawfully discharged, regardless of his actual presence within the institution"). Contrary to defendant's assertion, there is no type of escape in the continuum from confinement to completed escape that is not covered by the aggravated murder statute.

Second, the fact that the legislature chose to omit escapees from federal prisons from the aggravated murder statute does not, by itself, render the statutory scheme disproportionate. The legislature was not required to invite potential Supremacy Clause[14] problems by imposing a *state*

---

[13] ORS 162.165(1) provides:

"A person commits the crime of escape in the first degree if:

"(a) Aided by another person actually present, the person uses or threatens to use physical force in escaping from custody or a correctional facility; or

"(b) The person uses or threatens to use a dangerous or deadly weapon escaping from custody or a correctional facility."

[14] The Supremacy Clause, Article VI, clause 2, of the Constitution on the United States, provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges

consequence on a federally-created status of escapee. The legislative distinction does not create, in defendant's case, the possibility of a sentence so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper.

## CHALLENGES RELATING TO THE GUILT PHASE

We next address defendant's assignments of error as to the trial court's admission of certain evidence during his trial.

### 1. Admission of Exhibit 2.

■ Defendant argues that the trial court improperly admitted Exhibit 2, a certified copy of the judgment from defendant's 1980 conviction in Washington for "robbery, while armed with a dangerous weapon." During defendant's trial, an employee from a Washington work release center testified that defendant had escaped from that facility. That employee identified Exhibit 2. Over defendant's objection, the trial court admitted Exhibit 2.

Defendant concedes that evidence that he had escaped from a correctional facility and had not yet been returned to custody before the murder was relevant, because his status as an escapee was the aggravating factor in the charge of aggravated murder. Defendant argues, however, that proof as to *why* he had been incarcerated in Washington was not relevant under OEC 401 and, therefore, that Exhibit 2 should have been excluded by the trial court.[15] If such evidence was relevant, defendant argues that Exhibit 2 nonetheless should have been excluded under OEC 403, because any probative value in the exhibit was substantially outweighed by the danger of unfair prejudice to him.[16]

_____

in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

[15] OEC 401 provides that "relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[16] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

We hold that, even if the trial court erred in admitting the judgment of conviction — a question we do not decide — the error was harmless. OEC 103(1) provides:

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *."

A substantial right of defendant's is not affected if there is little likelihood that any error in admitting Exhibit 2 affected the verdict. *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987). *See generally State v. Williams*, 313 Or 19, 55-56, 828 P2d 1006 (1992) (Unis, J., dissenting) (summarizing Oregon "harmless error" law).

Defendant had testified at his prior trial, and a transcript of that prior testimony was admitted in the present case. When asked on cross-examination in that prior trial about prior convictions, defendant responded that he had been "arrested" for forgery, theft, and armed robbery.[17] In addition, defendant did not object to a portion of the prosecutor's opening statement that referred to defendant's prison term in Washington for armed robbery. Any prejudice to defendant was further diminished by the trial court's instruction to the jurors not to use defendant's prior convictions — as opposed to the fact that he was confined in a correctional institution pursuant to one of those convictions — for any purpose other than in evaluating defendant's credibility as a witness.[18] As this court has emphasized before, "jurors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990); *see State v. Walton*, 311 Or 223, 250, 809 P2d 81 (1991) (same). We hold,

---

issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[17] Despite defendant's use of the word "arrested," the context would permit the jury to infer that defendant meant "convicted."

[18] The trial court instructed the jury that:

"[i]f you find that the defendant has been previously convicted of a crime, you may only consider this conviction for its bearing, if any, on the believability of the defendant's testimony. Specifically, you may not use this evidence for the purpose of drawing the inference that because the defendant was convicted of a previous crime, the defendant may be guilty of the crime charged in this case."

therefore, that there is little likelihood that any error in admitting Exhibit 2 would have affected the verdict. *See State v. Hansen, supra,* 304 Or at 180.

## 2. *Exclusion of testimony of the social services worker.*

■ Defendant next argues that the trial court erred under OEC 702 in excluding the testimony of Tom Jenkins, a worker at the St. Francis Outreach Ministry in downtown Portland.[19] Jenkins testified during defendant's offer of proof that it was common in downtown Portland for middle-aged and older men to carry weapons for self-defense. Jenkins testified that downtown Portland was hazardous for the older men who were there. Defendant contends that Jenkins' testimony would have aided the jury in understanding that defendant was acting in conformance with the customs of the locality when he possessed a knife on the day that he was arrested. Defendant asserts in his brief that he was concerned that, without evidence on this point, "the jury might conclude that the mere fact that defendant carried a knife indicated that he was likely to be aggressive and commit assaults."

The trial court sustained the state's motion to exclude Jenkins' testimony. We hold that, even if the trial court's ruling were error — and we do not intimate that it was — the exclusion of Jenkins' testimony was harmless. OEC 103(1); *State v. Hansen, supra.*

Defendant fails to explain how the trial court's ruling prejudiced any substantial right of his. The state did not rebut defendant's separate testimony that he bought the knife for self-protection. Moreover, on cross-examination of the manager of the motel where Maher was murdered, defendant brought out testimony that the motel was located in a "rough neighborhood." A Deputy City Attorney for the City of Portland testified that, in the area around that motel, there

---

[19] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Although OEC 702 is the "expert" testimony rule, defendant stated to the trial court that he sought to introduce Jenkins' testimony as proof of a "habit" or "custom," evidence admissible under OEC 406. Defendant's errant approach, however, is not pertinent to the resolution of this issue.

was "[a] great deal of prostitution and drug activity," and also that he had seen "incidents of violence" in that area. In view of that evidence, there is little likelihood that the trial court's exclusion of Jenkins' testimony, even if erroneous, affected the verdict. *State v. Hansen, supra.*

### 3. Cross examination of defendant's sister.

■　During trial, the state cross-examined defendant's sister as to why she had failed to testify in a "prior proceeding in this case" that "was every bit as important to [defendant] as this proceeding."[20] Defendant objected to two subsequent questions. The trial court overruled defendant's objection as to one, but sustained it as to the other. Later, when the prosecutor concluded cross-examination of the sister, defendant moved for a mistrial, arguing to the trial court that the clear inference to be drawn by the jury from the prosecutor's comments about the "prior proceeding" was that there had been a "prior trial" in the case. The trial court denied that motion, stating that defendant had failed to make his motion for a mistrial in a timely manner and that, during trial, there had been discussion about "prior hearings, prior lawyers, prior investigations, prior everything."

Defendant contends that the trial court erred in overruling his objection and in denying his motion for a mistrial. Defendant argues that the prosecutor's questioning was improper and highly prejudicial to defendant, because the questions implied that defendant had been previously tried on the same charge. "The jury," defendant states, "could have been led to speculate about the prior trial." Apparently, defendant means that such speculations could have led the jurors to conclude that defendant had been convicted.

Defendant is precluded from appellate review of this issue, because he failed to object in a timely manner. *State v. Walton, supra,* 311 Or at 248 (failure to object timely precludes appellate review); *State v. Brown,* 310 Or 347, 371, 800 P2d 259 (1990) (same).

---

[20] That "prior proceeding in this case" was defendant's conviction for the same charge as in the present case — the murder of Maher. This court reversed that conviction on grounds not relevant to the present appeal. *State v. Isom,* 306 Or 587, 761 P2d 524 (1988).

The pertinent colloquy *at trial* was as follows:

Question [by prosecutor]: "You're familiar with the fact that back in December of 1986, there was another prior proceeding in this case; is that right?"

Answer: "Yes."

Question: "You know that. And that proceeding was every bit as important to your brother as this proceeding that we're having here today, isn't that correct?"

Answer: "I'm sure it was."

Question: "Right. Very important, okay. You never appeared as a witness in that proceeding, did you?"

[Defense counsel]: "Objection, it's a comment on prior counsel's strategy."

The Court: "It's a question. Yes or no."

Question [by prosecutor]: "You never — "

The Court: "Overruled."

Defendant objected only to the prosecutor's "comment on prior counsel's strategy." That is a different theory than the one defendant argued later on his motion for mistrial and that he now argues, *viz.*, that the prosecutor improperly referred to the prior proceeding as "every bit as important to your brother as this proceeding." An objection on one ground is not sufficient to preserve some other objection. *Wallender v. Michas*, 256 Or 587, 592, 475 P2d 72 (1970) (setting forth general rule). Moreover, the reference to the prior proceeding occurred several questions before the objection. The objection was not timely. *See* OEC 103(1)(a) (objection must be timely).[21]

*4. Refusal to give a "lesser included" instruction on intentional murder.*

■ The state charged defendant with one count of aggravated murder; no lesser included offenses were charged in the indictment. At the conclusion of the trial, defendant asked the trial court to instruct the jury on four lesser included offenses: (1) intentional, but not aggravated, murder, ORS

---

[21] OEC 103(1)(a) provides:

"In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."

163.115; (2) first degree manslaughter, ORS 163.118; (3) second degree manslaughter, ORS 163.125; and (4) criminally negligent homicide, ORS 163.145. The trial court denied defendant's request as to intentional murder but instructed the jury as to the other three offenses.

Defendant argues that the trial court erred under ORS 136.465, discussed *post*, when it failed to instruct the jury on the intentional murder charge. He also argues that the trial court's refusal to instruct the jury on that charge violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. The jury, defendant asserts, "should have had the opportunity to determine that the aggravating factor had not been proven without having to acquit defendant for murder." Failure of the trial court to give the jury that opportunity "was harmful and requires a reversal of defendant's conviction for aggravated murder."

We first address this issue under Oregon statutory law. ORS 136.465 provides:

"In all cases, the defendant *may* be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument or of an attempt to commit such crime."

(Emphasis added.) The crime of intentional murder is "necessarily included" in the crime of aggravated murder. *See* ORS 163.095 (1985) (statutory definition of aggravated murder).

The state responds that ORS 136.465 is permissive. It does not mandate a lesser included offense instruction when, because of the evidence in the particular case, a lesser offense, although statutorily "necessarily included" in the charged offense, nonetheless is not *factually* a lesser included offense. The state relies on *State v. Naylor*, 291 Or 191, 195, 629 P2d 1308 (1981), which this court recently reaffirmed in *State v. White*, 303 Or 333, 348, 736 P2d 552 (1987). In *Naylor*, this court held that, under ORS 136.465, a defendant has a right to a jury instruction for a lesser included offense if a rational juror could conclude that, based on the evidence as to a disputed fact, the defendant was not guilty of the greater offense but was guilty of the lesser offense. 291 Or at 195 n 2.

On the evidence in the present case, no rational juror could have concluded that defendant was *not* guilty of aggravated murder but *was* guilty of intentional murder. Defendant therefore did not have a statutory right to a lesser included instruction on intentional murder. Under the statutory scheme, the only factor that separates aggravated murder from intentional murder is the presence of an aggravating factor. Although defendant asserted that he did not fall within the scope of the statute as a matter of *law*, he admitted in his prior testimony that he was an escapee, as we have now defined that term, as a matter of *fact*. Moreover, his trial counsel acknowledged the same thing in closing argument. What defendant *did* dispute factually was whether he was acting intentionally when he caused Maher's death. That issue did not distinguish the offense of intentional murder from the offense of aggravated murder. It did distinguish between manslaughter and aggravated murder. The trial court therefore did not err in denying defendant's request to instruct the jury as to the charge of intentional murder.

■ In the alternative, defendant argues that the trial court's refusal to instruct the jury on the lesser included offense of intentional murder violated defendant's rights under the federal constitution as interpreted in *Beck v. Alabama*, 447 US 625, 100 S Ct 2382, 65 L Ed 2d 392 (1980).[22] In *Beck v. Alabama, supra*, the Supreme Court held that a state statute which prohibited *factually-appropriate* lesser included offense instructions in capital cases violated the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment. As our previous discussion shows, the trial court's ruling in this case did not violate defendant's rights under *Beck v. Alabama, supra*, because there was no evidentiary basis for instructing the jury as to intentional murder.

## CHALLENGES RELATING TO
## THE PENALTY PHASE

We next address defendant's assignments of error relating to the penalty phase of his trial.

---

[22] Defendant made no parallel claim under the state constitution.

## 1. Instructions as to the "fourth question."

 Defendant assigns as error the trial court's instruction to the jury to consider all the mitigating evidence and to answer whether defendant should receive the death penalty. That instruction concerns what has come to be called the "fourth question" in a death penalty case. See State v. Pinnell, 311 Or 98, 117-18 n 30, 806 P2d 110 (1991) (setting forth the development in Oregon of the "fourth question"). We hold that the jury instructions in this case were adequate under both the state and federal constitutions.

Before the jury returned the verdict of death in the present case on July 21, 1989, the legislature amended Oregon's aggravated murder statute to include a fourth question to be asked of the jury.[23] That amendment was in response to Penry v. Lynaugh, 492 US 302, 109 S Ct 2934, 106 L Ed 2d 256 (1989), where the Supreme Court of the United States held that a Texas aggravated murder statute was unconstitutional, because it failed to permit a jury to give meaningful consideration to the entire range of possible mitigating evidence relative to the accused and to provide a "reasoned moral response" to the ultimate question of whether the accused should live or die.[24]

The trial court in this case, after much discussion with the parties, decided to instruct the jury on a fourth question based on the newly enacted amendment to ORS 163.150 and Penry v. Lynaugh, supra. The trial court did not, however, instruct the jury in the exact words of the statute. Instead, it instructed the jury as follows:

"You will be given questions that you must answer either yes or no. * * *

"*In answering these questions, you are to consider any mitigating circumstances received in evidence.* You may

---

[23] The fourth question, ORS 163.150(1)(b)(D) (1989), provided:

"If constitutionally required, considering the extent to which the defendant's character and background, and the circumstances of the offense may reduce the defendant's moral culpability or blameworthiness for the crime, whether a sentence of death be imposed."

[24] Oregon's aggravated murder statute was patterned after the Texas aggravated murder statute at issue in Penry v. Lynaugh, 492 US 302, 109 S Ct 2934, 106 L Ed 2d 256 (1989). State v. Wagner, 309 Or 5, 13, 786 P2d 93, cert den ___ US ___ (1990) (Wagner II).

consider as a mitigating factor *any aspect of the defendant's character or record, and any of the circumstances of the offense* that the defendant has offered, which you deem worthy of consideration."

(Emphasis added.) The trial court next instructed the jury on the other three questions provided in the statute. The court then gave the instruction — the fourth question — that defendant challenges on this appeal:

"And the final question asked by the law is if you are unable to give full effect to any mitigating evidence under the first three questions, then considering the extent to which the defendant's character and background and the character and circumstances of the offense may reduce the defendant's moral culpability or blameworthiness for the crime, should a sentence of death be imposed."

The trial court also instructed the jury:

"You are to employ a reasoned moral response to evidence of mitigation in reaching your verdict. *You can consider these questions in any order.*"

(Emphasis added.)

Defendant argues that the fourth question in the present case was constitutionally inadequate for three reasons. First, he asserts that "the fourth question in this case fails the intelligibility standard because it simply repeats the confusing language of the amended statute." This court in *State v. Wagner*, 309 Or 5, 18, 786 P2d 93, *cert den* ____ US ____ (1990) (*Wagner II*), observed that ORS 163.150(1)(b)(D) (1989) — the statutory fourth question to which defendant refers — lacked "grammatical clarity" and was therefore constitutionally inadequate. As noted, however, the jury instruction in this case did not repeat the 1989 statutory fourth question that this court suggested, in *Wagner II, supra*, lacked grammatical clarity. The trial court created instead a fourth question that, when read with the jury instructions as a whole, was remarkably similar to this court's suggested instruction set forth in *Wagner II, supra*, 309 Or at 19, an opinion issued over five months after defendant's trial in this case. We there stated that a trial court's instructions need not be identical to our suggested fourth question. *Id.* at 18. We held that the instruction need only accurately state the law and otherwise be "intelligible."

We hold that in this case, the jury instructions as a whole are "intelligible" and constitutionally adequate as to the fourth question required by the Supreme Court in *Penry v. Lynaugh, supra,* and by this court in *Wagner II.*

 Defendant next claims that the trial court's instruction to the jury in this case to consider the fourth question only if "unable to give full effect to any mitigating evidence under the first three questions" was inconsistent with *Wagner II,* because it made the jury's consideration of mitigating evidence contingent on the jurors' deliberations on the first three questions. Again, defendant's argument is not well taken.

The trial court specifically instructed the jury that it could consider the four questions "in any order." That instruction is clear; it cures any doubt about the meaning of the phrase "if you are unable to give full effect to any mitigating evidence under the first three questions." Considering the instructions as a whole, a reasonable juror would have understood the fourth question to mean that the jury was to consider any mitigating evidence to which the jury was otherwise unable to give full effect under the instructions in order to answer the question of whether a sentence of death should be imposed. The fourth question in this case, therefore, did not impermissibly make consideration of any mitigating evidence contingent on the jury's having already deliberated on the first three questions.

Finally, defendant argues that the fourth question was improper, because it limited the jury's consideration of mitigating evidence to evidence causally related to the offense. Defendant correctly contends that such an effect, if present, would violate this court's holding in *Wagner II, supra,* 309 Or at 19-20. However, we disagree with defendant's assessment of the effect of the fourth question in this case.

Defendant's argument fails, because the fourth question cannot be read in isolation. The jury was instructed that, "[i]n answering [the four questions], you are to consider *any mitigating circumstances received in evidence.*" (Emphasis added.) The trial court also instructed the jury that it could "consider as a mitigating factor *any aspect of the*

*defendant's character or record."* (Emphasis added.) The jury instructions, when read as a whole, clearly instructed the jury to consider *all* mitigating evidence, whether or not that mitigating evidence was causally related to the crime.

We hold that the jury instructions in this case were constitutionally adequate with respect to the challenges defendant here makes to them.

*2. The definition of "society."*

The second statutory penalty-phase question requires the jury to decide:

> "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to *society.*"

ORS 163.150(1)(b)(B). (Emphasis added.) Defendant requested the following instruction:

> " 'Society' means society no matter whether the universe of that society be great or small."

The trial court refused to give that instruction; the court, however, permitted defendant to argue whatever he wanted society to mean, provided it affected him. During his closing argument, defendant made two references to the jury as to the meaning of "society."

Defendant argues that the trial court erred in denying his requested instruction. The language for that instruction was taken from *State v. Wagner*, 305 Or 115, 752 P2d 1136 (1988), *vacated*, 492 US 914 (1989). This court there rejected a challenge to the term "society" in Oregon's aggravated murder statute.

> "Amici question in what 'society' the issue operates. They seem to argue that the question is meaningless unless the jury knows whether it is society at large or a part thereof, such as prison, that is to be the setting in which the question is posed. We conclude that the answer is what the statute says, namely 'society,' no matter whether the universe of that society be great or small."

*Id.* at 153.

Defendant's requested jury instruction would have told jurors that "society" means society. That would have

added nothing to the instructions actually given to the jury; therefore, the trial court did not err in refusing to give it. *See State v. Montez*, 309 Or 564, 600-01, 613, 789 P2d 1352 (1990) (no error in trial court's refusal to give defendant's requested instruction when that instruction added nothing to the instructions given by the trial court).

We have considered all of defendant's assignments of error, including those not discussed in this opinion. They are not well taken.

## CONCLUSION

Defendant's conviction for aggravated murder and sentence of death are affirmed.

**FADELEY, J.,** dissenting.

I dissent for the reason stated in the first three paragraphs of the dissenting opinion in *State v. Williams*, 313 Or 19, 44-45, 828 P2d 1006 (1992).

Specifically, the homicide in this case occurred at a time when the Oregon statute did not meet federal constitutional muster. The Supreme Court of the United States vacated the sentence and remanded a death penalty case to this court in *Wagner v. Oregon*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989). Thereafter, this court, by a majority vote, added 100 words to the statute in an effort to save it from the constitutional infirmity. *See State v. Moen*, 309 Or 45, 102-04, 786 P2d 111 (1990) (Fadeley J., dissenting, detailing the 100-word addition to statute). The statute had been initiated and adopted in 1984. I do not believe this court had authority to make a substantial, significant, and after-the-fact addition to the 1984 statute that the people, by their vote adopting it, did not include. Thus, the majority has affirmed a sentence based on judicial amendment to a penalty statute.

Only the legislative branch may enact penal laws. I dissent.