Argued and submitted August 28, 1981, affirmed March 22,
reconsideration denied April 27,
petition for review denied May 18, 1982 (293 Or 146)

KINGSBURY,
*Appellant,*
*v.*
HICKEY,
*Respondent.*

(No. 39-058, CA 18605)

642 P2d 339

Charles Robinowitz, Portland, argued the cause for appellant. With him on the briefs was Charles N. Isaak, Portland.

Eric R. Friedman, Portland, argued the cause for respondent. With him on the brief were Joseph J. McCarthy, and Fellows, McCarthy, Zikes & Kayser, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Richardson, Judges.

WARREN, J.

## WARREN, J.

This is a damage action for personal injuries sustained by plaintiff when the motorcycle he was riding collided with defendant's jeep. The jury returned a verdict for defendant, and plaintiff appeals. The issue is whether the trial court erred in excluding evidence offered by an accident reconstructionist.

In October, 1976, plaintiff and defendant were traveling on Greener Road, a two-way dirt and gravel road about 15 feet wide. Plaintiff was riding the motorcycle around a sharp curve when it collided with defendant's jeep, which was traveling in the opposite direction. The evidence at the scene included a tire mark from the left rear tire of the jeep and an oil spill from the ruptured oil tank of the motorcycle. Both vehicles were moved before the police arrived.

Defendant testified that he was traveling in the right lane at about 15 miles per hour when he saw the motorcycle approaching at about 40 miles per hour in his lane of traffic. Unable to avoid the collision, he braked. The jeep was stopped when the motorcycle struck it. Defendant also stated that a tire mark in the road was made as he backed up after the accident so that he could turn the jeep around and drive down the road to call the police.

Plaintiff had no memory of the collision. A witness who was riding another motorcycle with him testified that plaintiff was riding in his correct lane and that the jeep was in the center of the road. He did not know how fast the jeep was going, but he guessed that plaintiff was traveling around 25 to 30 miles per hour.

Plaintiff called an expert in the area of accident reconstruction. The witness testified that he was a registered consulting engineer specializing in mechanical engineering.[1] He first visited the scene of the accident in 1980. It was admitted that the condition of the road was different from what it had been at the time of the accident. The witness walked the curve and took measurements. He inspected the motorcycle, which apparently had not been

---

[1] There was no challenge to the witness' qualifications as an expert.

repaired, examined a jeep similar to defendant's[2] and reviewed the police report on the accident.

The witness was told to assume:

"* * * [T]he road width was 15 feet at the time of the collision, that there was a skid mark of the left rear wheel of the jeep 8 feet from the right-hand side of the useable [sic] part of the road, and the skid mark was 12 feet long, that there was an oil spill from the motorcycle and the center of the spill was 7 feet from the right-hand side of the useable [sic] portion of the road, that the motorcycle was in good condition prior to the collision and in the same state in which you saw it immediately afterwards, * * * that the curve of the road was the same as the curve of the road when you saw it, * * * that the jeep in Exhibit 7 was similar in front-end dimensions to the jeep that was involved in the collision, * * * that the surface was graveled at the time, and dry, and * * * that the motorcycle made an indentation in the front bumper of the jeep at the center of the jeep, 8 inches, * * *."

He testified:

"* * * [L]ooking then at the degree of damage to each one, I did not make any determination * * * other than the fact that their velocities were somewhere in the neighborhood of 20 miles an hour, and there was no further analysis as to that."

On the basis of this determination of speed and other factors, the witness concluded that the right fork of the motorcycle struck the jeep first.

These conclusions as to speed and the first point of contact between the vehicles, along with the assumptions set out above, form the basis for the witness' determination of the point of impact of the vehicles. He concluded that the motorcycle was traveling in its correct lane and that the jeep was as much as 16 inches over the center line in the motorcycle's lane.

■ ■ In *State v. Stringer,* 291 Or 527, 633 P2d 770 (1981), 292 Or 388, 639 P2d 1264 (1982), the Supreme Court held that admissibility of accident reconstruction evidence would be judged by the same rules that govern the

---

[2] Defendant no longer owned the jeep involved in the accident by the time of trial.

admissibility of opinion evidence of experts on other issues. An expert's opinion is admissible only if it is based on facts in evidence or on facts within the personal knowledge of the expert. *Harpole v. Paeschke Farms Inc.,* 267 Or 592, 595, 518 P2d 1023 (1974); *Wulff v. Sprouse-Reitz,* 262 Or 293, 304-310, 498 P2d 766 (1972). Expert evidence offered without sufficient foundation is too speculative and therefore not admissible. *Urbanski v. Johnson,* 283 Or 169, 581 P2d 948 (1978).

In this case, the witness determined the speed of the vehicles in large part from his examination of the damage to the motorcycle and a description of the damage to the jeep. The speed of the vehicles was computed on the basis of the energy or force required to cause the damage. The witness's conclusion that the jeep was traveling at 20 to 25 miles per hour is a critical fact in his determination of the point of impact.

In *Francis v. Burns,* 255 Or 156, 160-161, 458 P2d 934 (1970), the Supreme Court discussed the difficulty of attempting to estimate speed from damage, quoting Lacy, Scientific Automobile Accident Reconstruction (1968) at 822:

> " 'Most investigators do not have the proper facilities, knowledge, or opportunity to determine the energy consumed from the damage done. *To do so would require experimental proof of the force required to bend, rip, tear, and fold every part of the vehicles that sustained damage.* An accomplishment of this type approaches the realm of a major engineering project.' " (Emphasis added.).

There is nothing in the record to indicate that any tests of the sort described were performed on either of the vehicles. This casts doubts on the accuracy of the witness' estimate of the force involved in the collision. Furthermore, it is not clear on what basis the witness allocated this force, in the form of velocity, to each of the two vehicles.

The burden of providing a proper foundation for an expert opinion is on the proponent of the evidence. When a hypothetical question is used as the vehicle for an opinion, *see Wulff v. Sprouse-Reitz, supra,* 262 Or at 308-309, the proponent of the evidence must ask the witness to assume the existence of such facts in evidence as may convince the

trial judge that the opinion given will aid the jury in determining the truth and is more than speculation by the witness. When the factual foundation is lacking or unreliable, the evidence should be excluded. The trial judge was entitled to conclude that the witness' estimate of the speed of the vehicles upon which his evidence on their point of impact depended lacked a reliable factual foundation and was speculative. *See Annot.,* 93 ALR2d 287 (1964). The evidence was properly excluded. *Urbanski v. Johnson, supra; Marshall v. Martinson,* 268 Or 46, 518 P2d 1312 (1979).

Affirmed.