Argued and submitted September 23, 1991, reversed and remanded April 8,
reconsideration denied July 1, petition for review denied September 29, 1992
(314 Or 391)

Mark HASS,
*Appellant,*

*v.*

PORT OF PORTLAND,
*Respondent.*

(A8909-05117; CA A65836)

829 P2d 1008

Michael R. Shinn, Portland, argued the cause and filed the briefs for appellant.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief were Robert E. Maloney, Jr., Kathryn P. Salyer and Lane Powell Spears Lubersky, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Plaintiff brought this action for damages for assault and battery, false arrest, false imprisonment and wrongful initiation of a civil proceeding as a result of an incident at the Portland International Airport. The trial court directed a verdict against plaintiff on his false arrest claim, and the jury found for defendant on the remaining claims. We reverse and remand.

The evidence was in conflict. Plaintiff's version was that on January 1, 1989, at about 9 p.m., he drove to Portland International Airport to pick up his parents. The holiday traffic was heavy and parking places were limited. He drove through the terminal arrival area, saw no one directing traffic and stopped his car, leaving the engine running. He left the car and ran toward the terminal to try to locate his parents. He heard somebody yell that he had to move his car, and he returned and got into his car. As he started to close the car door, a man in a dark blue uniform appeared. Plaintiff testified that he did not know that the airport had its own uniformed police force, and he could see only a portion of the man's torso. The man demanded to see plaintiff's driver's license, but plaintiff thought that the man was either a sky cap, a bus driver or a parking patrol person. Plaintiff said he would show his license to a police officer and asked to see identification. The man grabbed plaintiff by the wrists and began pulling him from the car. During the ensuing scuffle, plaintiff was grabbed by the hair and thrown onto the pavement. He was handcuffed, arrested and kept in custody for about two hours.

Defendant's version was that Officer Sorensen, a duly licensed member of the Port of Portland police, was directing traffic and saw plaintiff about to drive into a bus zone. Sorensen testified that he warned plaintiff not to do so, but that plaintiff did anyway. Sorensen was writing a parking ticket when plaintiff returned and told him that that was not necessary and he would move the car. The officer told him to remain until the ticket was written, but plaintiff got into his car. Because plaintiff had disobeyed him by parking in the bus zone and refusing to wait for a ticket, Sorensen decided to cite plaintiff for his disobedience. When Sorensen asked plaintiff for his driver's license, a lengthy verbal exchange followed

during which the officer raised his badge in front of plaintiff's face and recited his training and I.D. number. Sorensen testified that he asked plaintiff three times for the driver's license before telling him that he was under arrest and that only as a last resort did he make physical contact with plaintiff.

Plaintiff was issued citations for two traffic infractions: Failure to obey a police officer, ORS 811.535, and failure to present a driver's license. ORS 807.570. As permitted by ORS 807.570(3), defendant presented his license in court and that charge was dismissed. After a trial, plaintiff was found not guilty of the failure to obey charge. This action followed.

■    Plaintiff's first assignment of error is that the trial court erred in permitting evidence of the judge's comments from the traffic infraction proceeding. ORS 811.535 provides:

"(1)   A person commits the offense of failing to obey a police officer if the person refuses or fails to comply with any lawful order, signal or direction of a police officer who:

"(a)   Is displaying the police officer's star or badge; and

"(b)   Has lawful authority to direct, control or regulate traffic.

"(2)   The offense described in this section, failing to obey a police officer, is a Class C traffic infraction."

Over plaintiff's objection, the trial court permitted defendant to read to the jury:

"These were [the judge's] findings: 'I believe the officer showed his badge and demonstrated his authority. Based on the burden of proof, I'm going to find the defendant not guilty of this particular infraction.' "

Defendant argues that those comments constitute a "finding" and that the trial court was correct in permitting them "to show the basis for the judge's ruling, not that [the jury is] bound by them, because they're not." Plaintiff argues that the comments were not admissible as "findings of fact." He relies on ORS 153.260(2):[1]

---

[1] Although the parties direct their arguments to ORS 153.260, that statute is virtually identical to ORS 153.585(2), which is directly applicable to traffic infractions:

"Notwithstanding ORS 43.130 and 43.160, no plea, finding or proceeding upon any infraction subject to ORS 8.665, 153.110 to 153.310 and 153.990 shall be used for the purpose of res judicata or collateral estoppel, nor shall any plea, finding or proceeding upon any infraction be admissible as evidence, in any civil proceeding."

In order for plaintiff to prove his claim for wrongful initiation of civil proceedings, he had to prove that the traffic infraction case terminated in his favor.[2] *Alvarez v. Retail Credit Ass'n*, 234 Or 255, 381 P2d 499 (1963). The trial court determined that, if ORS 153.260 were applied literally plaintiff would be unable to offer proof of his acquittal and that the legislature could not have intended that result. It concluded, therefore, that ORS 153.260 was "at least ambiguous as it applies to [this] situation" and that, if plaintiff were able to present the acquittal, defendant should be able to explain the reasons for the acquittal.

ORS 153.260 is not ambiguous. On its face, it precludes evidence of any plea, finding or proceeding from an infraction proceeding. That that was the intention of the legislature is supported by the legislative history of the original statute excluding such use. That statute, now codified as ORS 153.585, *supra* n 1, was enacted as part of the infraction proceedings in the Motor Vehicle Code. ORS 153.260 was enacted as a conforming amendment.[3] Or Laws 1981, ch 692, § 27. The substance of the two provisions is the same.

We discussed the original enactment in *Ryan v. Ohm*, 39 Or App 947, 593 P2d 1296, *rev den* 287 Or 301 (1979), noting that the legislative history showed that the

---

"Notwithstanding ORS 43.130 and 43.160, no plea, finding or proceeding upon any traffic infraction shall be used for the purpose of res judicata or collateral estoppel, nor shall any plea, finding or proceeding upon any traffic infraction be admissible as evidence, in any civil proceeding."

Defendant argues that ORS 153.260 is unconstitutional, because it was part of an act whose title did not embrace the subject of ORS 153.260. Or Const, Art IV, § 20. Even if that were so, ORS 153.585(2) would still apply.

[2] Defendant does not cross-appeal or otherwise assign error to the introduction of evidence that the infraction proceeding terminated in plaintiff's favor. Neither does defendant contend that plaintiff did not, as a matter of law, state or prove a claim for wrongful initiation of a civil action.

[3] *See* Staff Measure Analysis to A-Engrossed HB 2046.

provision was enacted in order to preclude the use of guilty pleas to traffic infractions in subsequent civil proceedings. The legislative history demonstrates a desire to expedite the docket for traffic infractions by eliminating a need to consider the consequences of a plea of guilty, but it was clear that the reach of the evidence exclusion was intended to be broad:

> " '[The staff] proposes that [the legislators] insert * * * "nor shall any such plea, finding or proceeding be admissible as evidence." The reason he is suggesting this is that the bill as worded does not preclude the use of traffic infractions in some other civil or criminal proceedings simply for evidence other than, say, collateral estoppel or res judicata. *It would say that you cannot bring it in for any purposes.*' " *Ryan v. Ohm, supra,* 39 Or App at 951 (quoting Tape recording, Senate Judiciary Committee, March 5, 1975, Tape 15, Side 1). (Emphasis supplied.)

Even assuming that the infraction charge judge's comments were "findings," they were not admissible as evidence against plaintiff.[4] It was error to admit them.[5]

■        Defendant argues that, even if it was error to admit the comments, they did not affect the outcome of the trial,

---

[4] As plaintiff correctly notes, in order to convict him of failing to obey a police officer, the court would have had to "find" that the officer displayed his badge. To acquit him of the offense, no finding on that issue was required one way or the other. Furthermore, the additional comments of the judge do not support defendant's assertion that they rose to the level of "findings":

"[Plaintiff's Counsel]: I think it's important to read the whole [transcript of the judge's comments] in sequence, because * * * we're reading now a written transcript, and we're missing a lot of what you might get from the tone of his voice. When he says, 'I believe,' I don't know if it was 'I believe,' or 'I believe.'

"[Infraction Judge]: 'I believe the officer showed his badge and showed his authority and defendant chose to get into a jurisdictional argument with him regarding the City of Portland.'

"[Infraction Proceeding Defense Counsel]: 'Hold it, but there's no evidence of that.'

"[Infraction Judge]: 'I'm telling you that is what I believe, but as I say, I believe it's irrelevant to the issue I have.' "

[5] In a cross-assignment of error, defendant argues that the court erred in striking its affirmative defense that plaintiff was collaterally estopped from relitigating whether Sorensen displayed his badge. It contends that that was the effect of the court's ruling that the "findings" in the infraction proceeding were admissible but not binding. Even assuming that defendant preserved its objection, ORS 153.260 and ORS 153.585(2) preclude the use of a "finding" from an infraction proceeding for collateral estoppel, and defendant does not explain why that preclusion does not apply.

which, it argues, is required for a reversal under OEC 103(1).[6] Defendant relies on *Hager v. American Honda Motor Co., Inc.*, 101 Or App 640, 792 P2d 459 (1990), in which an expert testified to what he had been told by two other experts. We held that, even if the hearsay testimony of the other experts had been excluded, the plaintiff had not objected to the observations of the testifying expert, and those observations would still be admissible. On that record, the result of the trial would not have been different if the hearsay testimony had been excluded.

■   *Hager* does not assist defendant here. Plaintiff objected from the outset to admission of the judge's comments. Furthermore, we did not say, nor does OEC 103(1), that an appellant must always establish that evidentiary error would produce a different result. Rather, the test is whether the evidence affected a substantial right, that is, whether the erroneously admitted evidence has some likelihood of affecting the result. The opinion of a judge carries with it the weight of judicial office. Whether Sorensen had displayed the badge was relevant to whether he had reasonably demonstrated his legal authority. That determination would have a bearing on which witnesses were credible and whether a reasonable amount of force was used. That a judge had believed that the badge was shown was likely to carry great weight in the jury's determination. The error very likely affected a substantial right of plaintiff.

■   Because the issue is likely to arise on remand, we address plaintiff's second assignment of error. As a witness, plaintiff called a journalist for *The Oregonian* newspaper, Stanford, who had written an article about the incident, which appeared in the newspaper on March 27, 1989. Stanford notified counsel that, pursuant to ORS 44.510 and ORS 44.520, he would refuse to disclose his sources. *In camera*, he revealed that he did not have an independent memory of what statements plaintiff had made and what statements had come from other sources. He stated that he could only confirm or deny that the language of the article itself attributed a given

---

[6] OEC 103(1) provides, in part:

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *."

quote to plaintiff. The article began with the phrase, "As related by [plaintiff]" and included a statement that plaintiff had said:

"[T]he officer at the airport flashed a badge through the window of his car, saying, 'That's all the I.D. I need[.]' "

Plaintiff claims that the trial court erred in permitting defendant to cross-examine Stanford as to whether certain statements in the article had come from plaintiff. He argues that Stanford's lack of independent recollection and the restriction on inquiring into his notes resulted in a "charade" in which defendant read hearsay statements into the record without giving plaintiff an opportunity to examine the sources. He also argues that the cross-examination went beyond the scope of the direct questions that he claims were limited to whether the series of articles was printed, whether plaintiff had objected to their being written and the size of the readership of the column.

The extent of cross-examination rests largely in the discretion of the trial judge.[7] *Garrett v. Eugene Medical Center*, 190 Or 117, 224 P2d 563 (1950). Plaintiff made a tactical decision to call Stanford, knowing that he could claim the privilege not to discuss his sources. On direct examination, Stanford testified that he got the idea for the story from a "tip" and had written several columns concerning the incident. He had phoned plaintiff for more information, but plaintiff did not "encourage" him to write the story. In the light of that testimony, as well as plaintiff's own testimony that he had told his side of the story to Stanford, it was not error to permit defendant to inquire as to what plaintiff had told Stanford. Furthermore, Stanford could testify from personal knowledge as to what he did remember from his interview with plaintiff and from personal knowledge of what he had written in his article. The cross-examination, as a whole, shows that Stanford did not directly attribute any

---

[7] OEC 611(2) provides:

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

particular statements to plaintiff beyond what he had written. We find no abuse of discretion in the trial court's limitation of the extent of Stanford's cross-examination.

Reversed and remanded.