Argued and submitted March 20, 1992, reversed and remanded February 24, reconsideration denied August 11, petition for review pending 1993

Joan DYER,
*Appellant,*

*v.*

R. E. CHRISTIANSEN TRUCKING, INC.,
an Oregon corporation,
and Elbert Jay Price,
*Respondents.*

(CV89-0356; CA A68424)

848 P2d 104

Douglas G. Schaller, Eugene, argued the cause for appellant. On the briefs were Arthur C. Johnson, Don Corson and Johnson, Clifton, Larson & Bolin, Eugene.

I. Franklin Hunsaker, Portland, argued the cause for respondents. With him on the brief were Ronald G. Stephenson, Lisa E. Lear and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

Warren, P. J., specially concurring.

Edmonds, J., dissenting.

**RIGGS, J.**

In this personal injury case arising out of a car-truck collision, plaintiff appeals from a judgment on a jury verdict for defendants.[1] She assigns error to several of the trial court's evidentiary rulings and to its jury instructions. We reverse and remand.

On December 19, 1988, plaintiff was driving her car southbound on a two-lane highway in Douglas County. Defendant Price was travelling northbound on the same road in a truck with a full-size trailer and a "pup," or short, trailer. It had rained, and the road was wet. The two vehicles passed each other at a bend in the road. The bend was just south of a narrow bridge and was to plaintiff's left and to Price's right. Price testified that, as the cab of his truck passed plaintiff's car, each vehicle was in its proper lane. Price testified that his truck popped out of gear and, as he was putting it back in gear, he looked in his side-view mirror and saw plaintiff's car in a wreck on her side of the road. His pup trailer had lost its rear wheels and was dragging on the ground. Plaintiff was severely injured and does not remember the collision. There were no other witnesses. Plaintiff's theory of the collision is that the pup trailer swept into her lane as Price's truck went through the bend in the road. Defendants' theory is that plaintiff cut the corner and crossed into the northbound lane and into the pup trailer. The jury returned a general verdict for defendants.[2]

Plaintiff's first two assignments of error are related, and we analyze them together. She argues that the trial court

---

[1] Defendants are Price, the driver of the truck and R. E. Christiansen Trucking, Inc., the corporate owner of the truck and Price's employer.

[2] The verdict stated:

"We, the jury, find:

"1. Were the defendants negligent in one or more of the respects claimed in the plaintiff's complaint that caused damage to plaintiff?

"ANSWER: NO"

We comment with some frustration on the common practice of using general verdict forms in complex cases such as this one. It may be that the jury accepted plaintiff's theory of the collision but concluded that, although the pup trailer swept into plaintiff's lane, defendants were not negligent. The use of special interrogatories would clarify what the jury concluded, as well as who, if anyone, was at fault. That information could save time and money for plaintiffs, defendants and the courts.

erred in allowing defendants' expert witness, Weaver, to testify that drivers generally tend to cut corners and that drivers generally tend to cut the particular corner where the collision occurred. Specifically, plaintiff argues that the general tendency testimony is irrelevant to prove what she did at the time of the collision.[3] Defendants counter that the general tendency testimony is relevant to causation, because it concerns the effect of highway design on the tendency of drivers to cut corners and supports their theory that plaintiff crossed the center line. We review rulings on relevance for errors of law. OEC 401. If we find error, we may reverse only if we find that the error affected a substantial right of the party. OEC 103(1). That test is satisfied if the result of the trial *might* have been different. *Pearson v. Galvin*, 253 Or 331, 340, 454 P2d 638 (1969); *Hass v. Port of Portland*, 112 Or App 308, 314, 829 P2d 1008, *rev den* 314 Or 391 (1992).

Defendants' argument that the testimony concerned the effects of highway design on the general tendencies of drivers mischaracterizes the evidence. Although couched in terms of highway design, Weaver's testimony concerned the general tendency of *all* drivers to cut *any* corner on *any* road, and the general tendency of *all* drivers *to cut the specific corner* where the collision occurred. Weaver did not discuss any particular aspect of highway design except that the road curved.

General tendency evidence is in the same vein as evidence of prior conduct or events, which is generally inadmissible to prove negligence or lack of negligence. *See, e.g., Warner v. Maus*, 209 Or 529, 304 P2d 423 (1956). Here, the case against admissibility is even stronger. Defendants used the general tendencies of drivers as a group to show that plaintiff was negligent and caused the collision. Although

---

[3] At trial, plaintiff objected:

"[W]hat traffic does at other times and places is irrelevant and immaterial and has no probative value in this instance. * * * If other people at other times cut the corner, it doesn't mean she would cut the corner just because of her personality, her make up, her driving habits and practices. * * * What other people do at other times in other circumstances is not relevant or material. It has no probative value as to what the two drivers did in this case."

Plaintiff did *not* object that the probative value of Weaver's testimony was outweighed by its prejudicial effect. Her objection was simply that the testimony had *no* probative value and therefore was not relevant and not admissible.

prior conduct or events may be admissible to prove causation, danger, knowledge or intent,[4] the line between causation and plaintiff's possible negligence is blurred beyond distinction in this case. By trying to establish that plaintiff caused the collision, defendants are trying to establish that plaintiff crossed the center line and was negligent *per se* through evidence of the general tendencies of other people.

Defendants rely on *Carlson v. Piper Aircraft Corp.*, 57 Or App 695, 646 P2d 43, *rev den* 293 Or 801 (1982), and *Chance v. Ringling Bros.*, 257 Or 319, 478 P2d 613 (1970), to support their argument that the general tendency evidence is relevant. Those cases are of little help to defendants.

At issue in *Carlson* was the cause of the mid-air break-up of the decedent's small plane. We upheld the admissibility of expert testimony concerning spatial disorientation, a phenomenon that occurs when inexperienced pilots lose the visual horizon, as when flying in clouds, and become so disoriented that they disregard their instruments and abruptly adjust the aircraft, "with possibly disastrous consequences." 57 Or App at 699. The testimony on spatial disorientation concerned an *involuntary* reaction to particular and unfamiliar circumstances. The general tendency testimony at issue here concerned a *voluntary* decision by drivers in general to violate the law and cross the center line when driving through a bend in the road, a common and familiar circumstance. The testimony did not concern any reactions that might have been triggered by the particular conditions present at the time of the collision, such as the bank or angle of the corner, the weather conditions or, most notably, the presence of a tractor-trailer in the on-coming lane.

Defendants' reliance on *Chance* barely merits discussion. In that case, the plaintiff was injured when the defendant's boxer dog lunged at her. In support of her argument that the defendant knew of the vicious propensities of the dog, the plaintiff was allowed to present evidence that boxers tend to be protective and also tend to jump on people. The evidence was admitted to demonstrate the defendant's knowledge and did not concern the general tendencies of dog owners or some other class to which the defendant belonged.

---

[4] *See* Kirkpatrick, *Oregon Evidence* 111 (2d ed 1989).

The general tendency of drivers to cut corners, even this corner, is too remote to be relevant. What other drivers do at different times, locations and under different traffic and weather conditions is not probative of what plaintiff might have done at the time and place in question. *See Carter v. Moberly*, 263 Or 193, 198, 501 P2d 1276 (1972); *Savage Am'x v. Palmer*, 204 Or 257, 280 P2d 982 (1955); *Southern Pacific Co. v. Consolidated Freightways, Inc.*, 203 Or 657, 281 P2d 693 (1955).[5] The trial court erred in allowing the general tendency testimony.

Because we cannot tell whether the jury might have based its general verdict for defendants on the improperly admitted general tendency evidence, and because "the result of the trial might have been different" had the evidence been excluded, we reverse and remand. *Pearson v. Galvin, supra*, 253 Or at 331; *Hass v. Port of Portland, supra*, 112 Or App at 314. We discuss plaintiff's remaining assignments of error, because the issues will likely arise on remand.

In her third assignment, plaintiff argues that the trial court erred in allowing into evidence an aerial photograph of the scene of the collision, because Weaver used the photograph to illustrate his testimony that drivers tend to cut that particular corner. A photograph may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. OEC 403. Where the evidence is ruled relevant and the trial court has ruled on other admissibility issues, such as those presented by OEC 403 or OEC 702, we review the latter rulings for abuse of discretion. If the record supports either admission or exclusion, we must affirm the trial court's ruling. *Carter v. Moberly, supra*, 263 Or at 200.

Defendants argue that the photograph was properly admitted because a proper foundation had been laid, it accurately depicted the scene of the collision and was helpful to the trier of fact. We agree that defendants laid a proper foundation and that any changes in the area as depicted in the

---

[5] In *Carter v. Moberly, supra*, the Supreme Court said:

"[E]vidence of negligence at some other time and place is inadmissible to prove negligence on the occasion in question * * * [unless there is] sufficient evidence to indicate that the [negligent conduct] continued up to the time of the accident." 263 Or at 198. (Citations omitted.)

photograph were explained to the jury. *See DeMaris v. Whittier*, 280 Or 25, 569 P2d 605 (1977). The photograph could have helped the trier of fact by illustrating the scene of the accident, the relative distances involved and the landmarks discussed by various witnesses. OEC 901. However, the photograph also depicted two vehicles at or near the corner in question, at least one of which was over the center line as it entered the corner. That particular aspect of the photograph raised the risk of unfair prejudice or misleading the jury. However, because the trial court erroneously allowed testimony concerning the general tendencies of drivers to cut corners, it did not rule on whether the risk of unfair prejudice or misleading the jury raised by that particular aspect of the photograph, whether commented on or not, outweighed its probative value. We cannot review a ruling that was not made.

In her fourth assignment of error, plaintiff argues that the trial court erred in allowing Weaver to testify that, in his opinion, based on the general tendencies of drivers, plaintiff must have cut the corner and collided with defendants' pup trailer in the northbound lane. Plaintiff does not argue that Weaver was not qualified to give such an opinion, but rather that the facts or data on which he relied are not a proper basis for that opinion.

The proponent of an expert opinion has the burden of providing a proper foundation. *Kingsbury v. Hickey*, 56 Or App 492, 496, 642 P2d 339, *rev den* 293 Or 146 (1982). The facts or data relied on by an expert witness need not be admissible evidence but, to provide a proper foundation, they must be of "a type reasonably relied on by experts in the particular field in forming opinions." OEC 703. Whether that test is met is a preliminary matter for the court, which we review for abuse of discretion. OEC 104; Kirkpatrick, *Oregon Evidence* 459 (2d ed 1989), Legislative Commentary to Rule 703; *see State v. Baker*, 87 Or App 285, 291, 742 P2d 633, *rev den* 304 Or 405 (1987). The trial court abused its discretion in allowing expert testimony if the opinion lacked a sufficient foundation, because such an opinion is too speculative. *Urbanski v. Johnson*, 283 Or 169, 581 P2d 948 (1978).

Weaver testified on direct and cross-examination that his opinion that plaintiff crossed the center line and

caused the collision was based on the general tendencies of drivers to shy away from solid objects on their right and to cut corners.[6] Defendants argue that Weaver's opinion was premised on several other factors as well, such as his study of the photographs of plaintiff's wrecked car and the accident reports. The record does not substantiate that representation.[7] In *State v. Baker, supra,* we upheld the exclusion of expert testimony about the speed of the defendant's motorcycle at the time that it collided with an automobile. We agreed with the trial court that the testimony was too speculative, because

"the witness relied solely on police reports and photographs of the vehicles involved in the accident. He did not inspect the

---

[6] Weaver testified, in part:

"DIRECT EXAMINATION

"* * * * *

"Q: [Do] you have an opinion regarding what happened in this accident?

"A: Yes, I do.

"Q: What is that opinion?

"A: My opinion is that the vehicle southbound at some point impacted the back trailer axles of the - - what was called the pup of the northbound truck.

"* * * * *

"I think it is more likely than not that it was on the northbound portion of the road.

"Q: Can you explain to the jury the basis for your opinion?

"A: Part of it is when people are driving down a road they're less perceptive of where the right side of their vehicles are, * * *. So when there is something on the right side and in this case there was a bridge there, there is more of a tendency for people to move away from that and in highway design we allow for this, and as a matter of fact it's called a shy distance. It's an unwillingness of people to test those limits and so I think it is more likely that when confronted with a solid object on one side and the center of the road on the other, that a person is likely to move away from that solid object.

"* * * * *

"RE-CROSS EXAMINATION

"Q: Let me clarify. Then your opinion is based not on the physical evidence of the damage to the vehicles * * * but it's based on what you understand to be the tendency of drivers at that location?

"A: To the tendencies of drivers at locations similar to this."

The witness also testified that he had reviewed photographs of plaintiff's damaged vehicle and accident reports, but could not recall whether he had seen any photos of the tractor-trailer or the pup trailer or the maintenance records for the truck and pup trailer. He testified that neither the damage to plaintiff's car nor the damage to the tractor-trailer and pup trailer would affect his opinion that the collision occurred in the northbound lane.

[7] *See* n 6, *supra.*

vehicles personally. He was unaware of the condition of the roadway at the time and place of the accident. He did not hear the witnesses' description of the accident. He assumed that defendant's motorcycle brakes were functioning fully but had no personal knowledge as to their effectiveness. He did not consider that defendant's motorcycle had collided with another motorcycle before the collision with the automobile." 87 Or App at 291.

If reliance on police reports and photographs of the vehicles involved in an accident is an inadequate basis for an expert opinion as to point of impact, then reliance on the general tendencies of other drivers must also be an inadequate basis. Weaver's testimony lacked a sufficient foundation based on the facts and physical evidence of this case. It was too speculative and therefore the trial court abused its discretion in admitting it. *State v. Baker, supra; see also Urbanski v. Johnson, supra; Kingsbury v. Hickey, supra.*

Plaintiff next assigns error to the trial court's refusal to give her requested instruction that evidence of the general tendencies of other drivers is not evidence of plaintiff's conduct at the time of the collision. Plaintiff is correct for the reasons discussed in our analysis of her first and second assignments of error.

■ In her sixth assignment, plaintiff argues that the trial court erred in excluding a videotaped demonstration of the phenomenon of trailer sweep. The videotape was offered on three separate occasions, on direct, redirect and rebuttal examination[8] of plaintiff's expert witness, Limpert, who made the videotape. Each time it was offered, defendants objected on the ground that its probative value was outweighed by the risk of unfair prejudice, due to the many dissimilarities between the conditions at the time and place of the collision and at the time and place of the demonstration. The trial court agreed and excluded the videotape because it found that the risk of prejudice outweighed its probative value. OEC 401; OEC 403.

---

[8] The videotape was offered as rebuttal evidence against defendants' expert witnesses, who testified that trailer sweep could not occur under the conditions present at the time and place of the collision; that, if trailer sweep did occur, the driver would always feel it; and that, if trailer sweep were possible under the conditions at the time of the collision, the result would have been a "catastrophic loss of control" of the entire tractor-trailer rig.

■     The test for the admissibility of such demonstrative evidence is whether the differences in conditions of the demonstration and the event at issue are so great that they risk misleading or confusing the jury. *Loibl v. Miemi*, 214 Or 172, 327 P2d 786 (1958). The trial court has broad discretion in making that determination. *Tuite v. Union Pacific Stages, Inc.*, 204 Or 565, 284 P2d 333 (1955). Here, the trial court said that, "[i]n balancing whether or not [the demonstration] is sufficiently similar [to the collision] against the prejudice it would create, I find it is too dissimilar and too prejudicial." We cannot say that the trial court abused its discretion by excluding the videotape on that basis. We note, however, that the trial court allowed plaintiff's expert to testify at length about trailer sweep in general and the demonstration in particular. Also, over defendants' objections, the court allowed two still photographs of the trailer-sweep demonstration into evidence. Allowing some evidence of the demonstration is inconsistent with the trial court's ruling that the demonstration was not sufficiently similar to the accident scene to be admissible. We decline to speculate whether the circumstances on retrial will justify introduction of the videotape.

Plaintiff's remaining assignments require only brief discussion. She argues that the trial court erred in failing to order defendants to produce the entire contents of the file of one of their expert witnesses, which the witness had with him on the stand. Defendants claimed the attorney-client privilege. The witness testified that the particular file contained only correspondence with defendants' attorney and that the correspondence took place *before* he was asked to testify for defendants. That kind of correspondence is within the attorney-client privilege and need not be disclosed. OEC 503(2)(b). The trial court did not err.

Finally, plaintiff assigns error to the trial court's instruction to the jury on the basic speed rule.[9] That instruction was not error. It was a correct statement of the

_____

[9] The instruction was:

"In connection with the basic speed rule, I instruct you that the statutes of this state also provide for certain designated speeds. Speed in excess of the designated speed is a violation of the basic speed rule unless you are satisfied that such speed was reasonable under the existing circumstances.

"In this case, the applicable designated speed is fifty-five miles per hour in areas not otherwise described."

law, and the speed at which the parties were travelling was at issue.

Reversed and remanded.

**WARREN, P. J.,** specially concurring.

In determining whether certain evidence is admissible, the initial inquiry is whether it is "relevant." "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. The lead opinion concludes that the testimony of defendants' expert, Weaver, concerning the general tendency of drivers to cut corners, including the corner at issue in this case, "is too remote from the case at hand to be relevant." I agree with the dissent that that conclusion is wrong. However, I disassociate myself from the dissent's reliance on *Chance v. Ringling Bros.*, 257 Or 319, 478 P2d 613 (1970), and *Carlson v. Piper Aircraft Corp.*, 57 Or App 695, 646 P2d 43, *rev den* 293 Or 801 (1982). As the lead opinion adequately demonstrates, neither case is apposite here. In my view, Weaver's testimony is relevant, because it pertains to defendants' claim that plaintiff crossed the center line and makes that fact more probable than it would be without the evidence. Weaver testified that drivers in the southbound lane had a general tendency to cut the corner at issue due to the highway design. From this testimony, it can be logically inferred that plaintiff had the same *tendency* to cut that corner. Although it is questionable whether drivers' general tendency to cut corners calls for an expert's opinion, there was no objection on that basis. *See* OEC 702.

While Weaver's testimony is relevant, it does not necessarily follow that it should be admitted. Evidence should be excluded if its probative value is substantially outweighed by its prejudicial effect or other countervailing factors. OEC 403. The lead opinion holds that Weaver's testimony is irrelevant and thus does not reach the issue under OEC 403. However, the real reason the lead opinion does not decide the OEC 403 question is that plaintiff failed to object on a basis that requires an OEC 403 analysis. 118 Or App at 323 n 3. I disagree.

When defendants attempted to elicit testimony from Weaver concerning his observation of the traffic flow at the accident scene, plaintiff objected to it as "irrelevant" and "immaterial," because it related to "other similar conduct and events" intended to prove negligence or lack of negligence on the occasion in question. He also objected on the ground that "it would be prejudicial." The trial court sustained the objections. When defendants proceeded to elicit the general tendency evidence at issue, plaintiff again objected:

> "Your Honor, I object *on the same grounds essentially we've gone into before*, your Honor. It's *inappropriate, improper* and I object to the question as asked and ask it be stricken." (Emphasis supplied.)

Thereafter, during in-chamber discussions and as Weaver was about to testify, plaintiff continued to object as "irrelevant and immaterial," because

> "if other people at other times cut the corner, it doesn't mean [plaintiff] would cut the corner just because of her personality, her make up, her driving habits and practices. Nor does it tend to suggest that she would cut the corner if a truck is there * * *.
>
> "* * * * *
>
> "We are talking about a particular situation where there was a truck northbound and a car southbound. The visibility is, although it's wet, it's been raining, the visibility by all reports is good. [Plaintiff] can see the truck. We're talking about her particular manner of driving[,] not the general tendency [of] Oregonians in general to cut corners * * *."

Thus, plaintiff did initially object to Weaver's testimony on the basis of unfair prejudice, and the trial court was aware of that. Although she later objected to it as "immaterial" or "irrelevant," the substance of her argument was that the jury might misuse the general tendency evidence. Under the circumstances, unlike the lead opinion and the dissent, I would hold that plaintiff preserved the error below. *See State v. Phillips*, 314 Or 460, 466, 840 P2d 666 (1992); *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988); *Carlson v. Piper Aircraft Corp., supra*, 57 Or App at 700.[1]

---

[1] In *Carlson*, testimony concerning spatial disorientation was objected to on the basis of relevancy. 57 Or App at 699. We said that, "[w]hen a relevancy objection is made, the trial court must assess the probative value of the proffered evidence and

The probative value of Weaver's testimony is slight. At most, it shows that plaintiff might have the same tendency as most people to cut corners, even the corner at issue. On the other hand, its prejudice is great. The jury might be led to conclude, on that testimony alone, that plaintiff in fact cut the corner or crossed the center line, regardless of the actual circumstances surrounding the accident. The prejudice of that kind, although not inflammatory, is one that OEC 403 was designed to prevent. *See* Kirkpatrick, *Oregon Evidence* 127 (2d ed 1989). The prejudice is further aggravated by an aerial photograph that the trial court admitted, depicting one of two vehicles over the center line as it entered the corner. On balance, the probative value of the general tendency evidence was substantially outweighed by its unfair prejudice. The trial court should have excluded the evidence on that basis.

Another problem exists in the lead opinion. Because of its conclusion that plaintiff failed to preserve the unfair prejudice issue, the lead opinion relies on a no longer viable doctrine under OEC—"remoteness." *See* Kirkpatrick, *Oregon Evidence* 126. "Remoteness" is a term referring to *passage of time* that renders certain evidence irrelevant or makes it inadmissible in the light of some countervailing concerns as expressed in OEC 403. *McCormick On Evidence* § 185, 775 n 10 (4th ed 1992); *see also Marshall v. Martinson*, 268 Or 46, 52, 518 P2d 1312 (1974); *Carter v. Moberly*, 263 Or 193, 200, 501 P2d 1276 (1972); *State v. Robinson*, 104 Or App 613, 616, 802 P2d 688 (1990). Passage of time is not a question in this case. It would be a more straightforward analysis if the lead opinion simply said that the general tendency evidence is not relevant, rather than using the remoteness doctrine to reach that result.

I would hold that the general tendency evidence is relevant but should have been excluded on the basis of unfair prejudice. I therefore concur.

---

weigh it against the danger of prejudice, surprise and confusion." 57 Or App at 700. Although that rule may be questionable, plaintiff made an objection that I believe sufficiently informed the trial judge that she should analyze the issue under OEC 403.

**EDMONDS, J.,** dissenting.

The lead opinion holds that opinion evidence of the "shy distance," the general tendency of drivers to move away from a barrier on their right under certain conditions, is "too remote to be relevant." 118 Or App at 325. Weaver, an expert witness, testified that there is a general tendency of motorists when rounding a curve to move away from objects on the right side, in this case, a bridge barrier. He said:

"It's called a 'shy distance.' It's an unwillingness of people to test those limits and so I think it is more likely that when confronted with a solid object on one side and the center of the road on the other, that a person is likely to move away from that solid object."

"Relevant evidence" is evidence that has a tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence. OEC 401. The issue is whether plaintiff crossed the center line of the highway when she went around the corner. All relevant evidence on that issue is admissible unless it conflicts with a statutory, constitutional or decisional rule of evidence. "Evidence which is not relevant is not admissible." OEC 402. Thus, the inquiry is whether evidence of the general tendency of drivers to move away from a barrier on their right while going around a corner makes it more likely than not that plaintiff crossed the center line. In the light of OEC 402, we turn to decisional rules of evidence arising from cases in which general tendencies or propensities have been held admissible or inadmissible.

In *Chance v. Ringling Bros.*, 257 Or 319, 478 P2d 613 (1970), the court held that expert testimony concerning the characteristics and propensities of a certain breed of dog was admissible, because jurors might not be familiar with the propensities of that particular breed. The evidence was deemed probative, because the jury could have concluded that the circus, knowing of the propensity of the breed, was negligent in keeping the dogs in a certain area. In *Carlson v. Piper Aircraft Corp.*, 57 Or App 695, 646 P2d 43, *rev den* 293 Or 801 (1982), we held that the propensity of inexperienced pilots to become disoriented in clouds was probative of what caused the plaintiff's decedent's airplane to break up in mid-air.

In contrast to the admission of evidence of a "propensity" or the natural inclination to react in a particular manner under certain circumstances, The Supreme Court has held that evidence that drivers customarily obey or disobey a traffic sign offered to prove what a party did at the time in question is not admissible. *See Savage, Adm'x v. Palmer et al*, 204 Or 257, 272, 280 P2d 982 (1955); *Frame v. Arrow Towing Service*, 155 Or 522, 64 P2d 1312 (1937); *Fromme v. Lang & Co.*, 131 Or 501, 281 P 120 (1929); *Myrtle Point Trans. Co. v. Port of Coquille River*, 86 Or 311, 168 P 625 (1917). However, in *James v. Carnation Co.*, 278 Or 65, 562 P2d 1192 (1977), the court distinguished the holding in *Savage*. It said that the trial court did not err in admitting evidence of "custom and usage" as to how other drivers used an auxiliary lane to the right of the fog line where the plaintiff was parked, because the evidence was probative of the issue of comparative negligence.

In summary, the rule is that evidence of others' negligence is generally not admissible to prove the negligence of a party. However, evidence of others' negligence is often admissible on other relevant issues, such as causation, a dangerous condition or knowledge. In this case, a pivotal issue is whether defendants' trailer crossed the center line into plaintiff's lane or whether plaintiff crossed the line. The witness was asked whether "traffic that proceeds southbound coming across the bridge has any tendency * * * due to the design of the highway at that point [to cut across the curve in highway]?" He answered affirmatively. That evidence is not direct evidence that, on other occasions, drivers crossed the center line and, therefore, it follows that, on this occasion, that is what plaintiff did. Rather, it is evidence of a general tendency of drivers to drive in a particular manner because of a curve in the highway. Admittedly, the evidence gives rise to an inference that plaintiff was negligent, but so too did the evidence offered in *Carlson v. Piper Aircraft Corp.*, *supra*, and in *Chance v. Ringling Bros.*, *supra*.[1] The evidence is relevant and thus admissible, because it makes a fact in issue, whether

---

[1] In addition, the lead opinion draws a distinction between voluntary and involuntary reactions. When the dog lunged at the plaintiff in *Chance*, that act was a voluntary reaction and therefore, the majority's distinction is not supported by the decisional law.

plaintiff crossed the center line, more probable than it would be without the evidence.

The lead opinion holds that Weaver's testimony lacked a proper foundation. As authority, it relies on *State v. Baker*, 87 Or App 285, 742 P2d 633, *rev den* 304 Or 405 (1987). That reliance is misplaced. In that case, we held that the trial court "acted within its discretion in excluding the offered testimony [as speculative]." 87 Or App at 291. Just as it was within the range of the trial judge's discretion in *Baker* to exclude the evidence, here, it was within the discretion of the court to admit the evidence. There was a sufficient basis in the record on which the expert could give an opinion because of the expert's awareness of the design of the highway, the location of the bridge and his understanding of how the "shy distance" tendency affects motorists.

Also, I disagree with the concurring opinion that an OEC 403 objection was preserved. The fact that plaintiff's counsel included the word "prejudicial" in his objection to testimony about Weaver's observation of the traffic flow at the accident scene does not preserve an objection to Weaver's testimony that, in his opinion, drivers when rounding a curve have a tendency to move away from objects on the right side of the highway. The purpose of requiring an appellant to preserve an assignment of error by making a specific objection to the trial court is to provide the court an opportunity to correct its ruling. An objection on a specific ground as to specific testimony does not put the court on notice as to the parties position regarding different testimony. OEC 103(1)(a); ORAP 5.45(2); *Shields v. Campbell*, 277 Or 71, 77, 559 P2d 1275 (1977). Moreover, an objection on the basis of OEC 401 does not preserve an objection under OEC 403. *See State v. Isom*, 313 Or 391, 406, 837 P2d 491 (1992); *State v. Odoms*, 313 Or 76, 84, 829 P2d 690 (1992); *Wallender v. Michas*, 256 Or 587, 591, 475 P2d 72 (1970). In sum, I would hold that the trial court did not err when it admitted the evidence under OEC 402.

I dissent.