Argued and submitted January 5, decision of the Court of Appeals reversed and
judgment of the circuit court affirmed March 10, 1994

Joan DYER,
*Respondent on Review,*

*v.*

R. E. CHRISTIANSEN TRUCKING, INC.,
an Oregon corporation,
and Elbert Jay Price,
*Petitioners on Review.*

(CC CV89-0356; CA A68424; SC S40300)

868 P2d 1325

I. Franklin Hunsaker, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, argued the cause for petitioners on review. With him on the petition were Lisa E. Lear and Ronald G. Stephenson.

Douglas G. Schaller, of Johnson, Clifton, Larson, Corson & Phillips, P.C., Eugene, argued the cause for respondent on review. With him on the responses to the petition were Arthur C. Johnson and Kathryn H. Clarke.

GRABER, J.

**GRABER, J.**

This personal injury case arises from a vehicular accident that occurred on a rainy December day in 1988.[1] Plaintiff was driving her car south on a two-lane highway, Highway 99 in Douglas County. Defendant Price was driving north on the same highway in a tractor-trailer combination owned by defendant R. E. Christiansen Trucking, Inc., Price's employer. The tractor was pulling a full-length trailer and a "pup" or short trailer. At the area where the car and the tractor-trailer combination collided, Highway 99 crosses over a bridge and makes a curve to the right for northbound traffic and to the left for southbound traffic.

The two vehicles passed at the curve. Price was driving 40 to 45 miles per hour on the straight road before the curve, and he began to slow down at a gravel pile located about 250 feet before the curve. Price testified that he took his foot off the brake before entering the curve and did not apply the brake in the curve. There was no contrary testimony.

Price testified that each vehicle was in its own lane as his tractor passed plaintiff's car. Price testified that, after completing the curve, he heard a noise and felt his vehicle pop out of gear. He put it back in gear and looked in the side-view mirror. Price saw plaintiff's car wrecked against the guard rail on her side of the highway. The pup trailer, which had hit the guard rail on Price's side of the highway, had lost its rear axle and rear wheels and was dragging on the ground. Most of the debris from the collision, including parts of the trailer, was located in Price's northbound lane.

Price did not see the collision. Plaintiff was badly injured and remembers nothing about the collision. There were no other witnesses to it.

Plaintiff brought this personal injury action. Her theory of the case was that the pup trailer swept into her lane as the tractor-trailer combination rounded the curve. Defendants' theory was that plaintiff cut the corner at the curve in the road, crossing into the northbound lane and causing the

---

[1] We state the facts in the light most favorable to defendants, who prevailed before the jury. *See Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) (on appeal from jury verdict in favor of a party, court considers evidence, including inferences, in the light most favorable to that party).

collision with the pup trailer. Each side called expert witnesses. The jury returned a general verdict for defendants.

Plaintiff appealed from the resulting judgment. In her first two assignments of error, plaintiff argued that the trial court erred in allowing one of defendants' expert witnesses to answer a question about the effect of the highway's design on southbound traffic at the curve where the collision occurred. Plaintiff also assigned as error the trial court's admission of the same expert witness' testimony, in the form of an opinion, as to the location of the point of impact between the car and the tractor-trailer. In addition, plaintiff argued that the trial court erred in excluding a videotape demonstrating the phenomenon of "trailer sweep."[2]

On the basis of plaintiff's first two assignments of error, the Court of Appeals reversed and remanded the case for a new trial. *Dyer v. R. E. Christiansen Trucking, Inc.*, 118 Or App 320, 848 P2d 104 (1993). The court concluded that "[g]eneral tendency evidence is in the same vein as evidence of prior conduct or events, which is generally inadmissible to prove negligence or lack of negligence." 118 Or App at 323. The court also concluded that the evidence was "too remote to be relevant." *Id.* at 325. The court held that, as a result, the trial court erred in admitting the evidence and that the error prejudiced plaintiff. Accordingly, the Court of Appeals reversed the judgment below. *Id.* at 323-25.

Because they were likely to arise on remand, the Court of Appeals also considered plaintiff's other assignments of error. As pertinent here, the court held that the trial court erred in admitting expert opinion testimony concerning the point of impact of the two vehicles. *Id.* at 326-28. The court held that the trial court did not err in excluding plaintiff's videotape demonstrating the phenomenon of "trailer sweep." *Id.* at 328-29.

Defendants sought review in this court, and we allowed the petition. We reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

---

[2] Plaintiff raised several additional assignments of error before the Court of Appeals, but neither party sought review concerning that court's disposition of those additional assignments of error.

■     We first consider the issue whether the question put to defendant's expert — about the effect of the highway's design on southbound traffic at the curve where this collision occurred — sought relevant evidence. OEC 401 provides:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 402 provides:

> "All relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law. Evidence which is not relevant is not admissible."

"Whether the proffered evidence satisfies the minimum threshold of relevancy required by OEC 401 is a preliminary question for the trial judge under OEC 104(1)."[3] *Dept. of Trans. v. Lundberg*, 312 Or 568, 575, 825 P2d 641 (1992).[4]

We apply those principles to the challenged question in this case. At trial, defendants called as a witness a licensed traffic engineer. On direct examination, the witness detailed his experience in the planning, location, design, construction, maintenance, and operation of highways and stated that he was familiar with the section of highway where the collision occurred. The witness testified about various elements of highway design at the location of the collision, including the "coefficient of friction"[5] at the curve, the "degree of curvature," and the "superelevation"[6] of the roadway at the curve. After asking the witness several questions about the manner

---

[3] OEC 104(1) provides in part:

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court * * *."

[4] In *State v. Hampton*, 317 Or 251, 255-56, 255 n 8, 855 P2d 621 (1993), this court noted that a very low threshold of relevance is required by OEC 401. *See Dept. of Trans. v. Lundberg*, 312 Or 568, 575, 825 P2d 641 (1992) (same); *see also Krause v. American Aerolights, Inc.*, 307 Or 52, 57, 762 P2d 1011 (1988) (generally, this court's interpretation of relevancy is a "liberal" one).

[5] The witness defined "coefficient of friction" as "the amount of resistance something has towards side movement."

[6] Earlier in the trial, plaintiff's expert witness had equated the term "superelevation" with a lateral slope.

in which northbound trucks "would track going around the corner" where the collision occurred and about the maintenance of highways, defense counsel began to ask the challenged question:

> "Can you tell the jury, in relation to [the scene of the collision], whether traffic that proceeds southbound coming across the bridge has any tendency—"

Plaintiff objected on the ground that the question was "inappropriate" and "improper." The court asked to hear the complete question. Outside the presence of the jury, the following exchange took place:

> "THE COURT REPORTER: *'Question: Can you tell the jury, in relation to [the scene of the collision], whether traffic that proceeds southbound coming across the bridge has any tendency'* —
>
> "[DEFENSE COUNSEL]: (Continuing) — has any tendency *due to the design of the highway at that point?*
>
> "[PLAINTIFF'S COUNSEL]: I restate the objection, Your Honor. It would be irrelevant and immaterial as to what [plaintiff] did [in this case].
>
> "* * * * *
>
> "[DEFENSE COUNSEL]: Your Honor, I haven't asked him what [plaintiff] did on that date. I'm asking him, in the position that he holds, the purpose of the traffic engineer, * * * is to notice exactly this type of pattern, this type of wear. This is part of the function and I think it's relevant to show how traffic flows through that area." (Emphasis added.)

The court ruled:

> "The question — I haven't written down the entire question but *the essence of the question is whether or not there is any tendency due to the design and* the court would feel that *the issue of design is relevant*, so I would overrule that objection." (Emphasis added.)

   In aid of the objection, plaintiff's counsel then asked the witness several questions and renewed the objection, on the ground that the challenged question sought evidence of

> "a general tendency of drivers on curves and highways in this state to tend to turn, to cut on the inside of the curves and cut the corner. That has no probative value. * * * We're talking about [plaintiff's] particular manner of driving[,] not the

general tendency that Oregonians in general [have] to cut corners * * *."

The trial court stated:

> "*I will limit the issue only to the design*, which was the original question. So the original question can be answered." (Emphasis added.)

The challenged question solicited information about the typical movements of vehicles traveling in the same direction as plaintiff was traveling, over the same section of highway where the collision occurred, that resulted from the physical configuration of the highway in that area. The question did not seek evidence of other drivers' supposed negligence to prove plaintiff's negligence; rather, it sought evidence about the manner in which physical properties of the highway affected vehicles. The question sought evidence that was relevant, under OEC 401, to the issue of what caused the collision. The trial court did not err in overruling plaintiff's relevance objection to the challenged question.

■ Plaintiff also argues that the trial court abused its discretion in allowing the witness to answer the challenged question because, even if the evidence sought by that question was relevant, its probative value was substantially outweighed by the danger of unfair prejudice. *See* OEC 403 (providing in part that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). Again, the challenged question was whether, at the scene of the collision, "traffic that proceeds southbound coming across the bridge has any tendency due to the design of the highway at that point." As stated above, the evidence sought by that question was relevant to the issue of what caused the collision. In carrying out the balancing process called for by OEC 403, the trial court properly could conclude that the danger of unfair prejudice did not substantially outweigh probative value.

> " 'Unfair prejudice' within the meaning of OEC 403 does not mean that the evidence is harmful to the opponent's case — a central reason for offering evidence. *State v. Pinnell*, 311 Or 98, 105-06 n 12, 806 P2d 110 (1991). Rather, ' " '[u]nfair prejudice,' in the context of OEC 403, means an undue tendency to suggest [a] decision[] on an improper basis, commonly, although not always, an emotional one" ' *Id.*

(quoting Legislative Commentary to OEC 403, *reported in* Kirkpatrick, Oregon Evidence 125 (2d ed 1989))."

*State v. Hampton*, 317 Or 251, 259 n 15, 855 P2d 621 (1993). The trial court did not err in overruling plaintiff's objection under OEC 403 to the challenged question.

It follows from the foregoing that the trial court's evidentiary ruling was not error. The Court of Appeals' contrary holding was error. We need not reverse the Court of Appeals' result, however, if that result is justified on some other ground. We therefore consider plaintiff's other assignments of error argued in this court, to determine whether any of them warrants reversal of the circuit court judgment.

Plaintiff argues that the trial court erred in failing to exclude testimony by the traffic engineer in which he stated his opinion that the point of impact was in defendants' lane of travel. On direct examination, defendants asked the witness for his opinion regarding what happened in this accident. Plaintiff objected, on the grounds that the witness had not been shown to have the qualifications of an accident reconstructionist and that the witness had seen photographs of the tractor-trailer but had not examined it personally. The trial court overruled the objection. The witness then stated that it was his opinion that the point of impact was "on the northbound portion of the road." In this court, plaintiff renews her objections to the described testimony.

■ We first examine the objection to the traffic engineer's qualifications to testify as an expert as to the point of impact. OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

"The determination of an expert's qualifications is a preliminary question of fact for the trial judge under [OEC] 104(1)." L. Kirkpatrick, Oregon Evidence 433 (2d ed 1989).

The witness testified that, among other qualifications, he was the "traffic investigations and research engineer for the Highway Division of the [Oregon] Department of Transportation," that he had professional licenses in civil

and traffic engineering, and that he was a member of the "expert witness council" of the Institute of Transportation Engineers. The witness also explained the functions of traffic engineers and described his experience in carrying out those functions. The witness had 35 years of involvement in the planning, location, design, construction, maintenance, and operation of highways. The witness' education included mechanical engineering, as well as civil and traffic engineering. He taught traffic engineering. In addition, the witness had "read extensively on accident reconstruction" and had testified as an expert accident reconstructionist in the past. We conclude that the trial court was entitled to find that the witness was qualified, under OEC 702, to give an expert opinion regarding the point of impact in this case.

■    We next consider whether the witness' opinion relied on the type of facts or data reasonably relied on by experts in the field and whether the facts or data relied on by the witness supported his opinion. Plaintiff relies on OEC 703, which provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Whether the facts or data relied on by the expert are of the quality required by OEC 703 also is a preliminary question of fact to be decided by the trial court under OEC 104(1). L. Kirkpatrick, *supra*, at 459.

■    The record shows that the witness based his opinion on his knowledge of the principles of physics and mathematics and of mechanical, civil, and traffic engineering, including his knowledge of "the normal tracking pattern of trucks" (about which he testified); on his review of the police reports, the depositions of the witnesses, and photographs of the accident; and on an examination of the place where the collision occurred. The police reports, depositions, and photographs informed the witness about the damage sustained by the vehicles in the collision. The witness testified that his opinion would not have been affected by an examination of the vehicles themselves. On this record, the trial court was

entitled to overrule plaintiff's objection that the witness' opinion lacked foundation for failure to examine the vehicles. The trial court was presented with no other basis to conclude that the factual foundation for the opinion was not sufficient to satisfy OEC 703.

The trial court did not err in admitting, under OEC 702 and 703, the expert witness' opinion testimony that the collision occurred in defendants' lane of travel.

■ Finally, plaintiff argues that the trial court erred in excluding a videotape purporting to demonstrate the phenomenon of "trailer sweep." The videotape was made by, and offered in evidence in conjunction with the testimony of, plaintiff's expert witness, a "consulting engineer in motor vehicle and traffic safety." It showed a tractor-trailer/pup trailer combination traveling a right-hand curve on wet pavement; part way through the curve, the pup trailer "swept" into the oncoming lane.

Defendants objected to the admission of the videotape on the grounds that what it depicted was not sufficiently similar to what occurred in this case and that it was cumulative evidence, the probative value of which was outweighed by its prejudicial effect. After a lengthy discussion between the court and the parties regarding various features of the videotaped demonstration, the trial court sustained defendants' objection on the grounds that, under OEC 401, the circumstances depicted in the videotape were not sufficiently similar to the facts of this case so as to be relevant and that, under OEC 403, the prejudicial effect of the videotape outweighed any relevance.[7]

The trial court relied on the following facts in deciding that the demonstration depicted in the videotape was not

---

[7] Citing pre-Evidence Code cases from this court, Professor Kirkpatrick explains the application of pertinent evidentiary rules:

"Tests or experiments may be relevant evidence. However, to be relevant they must be conducted under the same or substantially similar conditions as the circumstances being litigated. *Myers v. Cessna Aircraft Corp.*, 275 Or 501, 553 P2d 355 (1976); *Foster v. Agri-Chem Inc.*, 235 Or 570, 385 P2d 184 (1963). The trial court has broad discretion in determining the admissibility of such evidence. *Tuite v. Union Pacific Stages, Inc.*, 204 Or 565, 284 P2d 333 (1955). The court must balance the relevance of the evidence against the dangers of unfair prejudice or misleading the jury."

L. Kirkpatrick, Oregon Evidence 118 (2d ed 1989).

conducted under conditions that were the same or substantially similar to the circumstances being litigated in this case:

"The difference in the concrete surface, the difference in the super elevation, the difference in the coefficient of friction, the difference in the model or, excuse me, year of the tractor, the difference in the length of the trailer[;] all of these things have been testified to by [plaintiff's expert who made the videotape] but there's also the issue of the length that the brake was applied and the place or the − in relationship to the curve when the brake was applied along with the amount of water on the surface as well as the tires and all of those factors together I cannot be convinced that they are so similar that I can allow it in[.]"

The record discloses the facts on which the court relied: For example, plaintiff's expert, who made the videotape, testified that the videotape depicted a longer pup trailer than the one that defendants' tractor was pulling and that the videotaped road had a dissimilar surface composition, a dissimilar coefficient of friction, and a dissimilar slope; and plaintiff's expert testified that the driver of the videotaped tractor-trailer combination applied his brakes in the curve, whereas Price testified without contradiction that he had not done so.

As stated above, the question whether proffered evidence is relevant under OEC 401 is a preliminary question for the trial judge under OEC 104(1). The trial court was entitled to conclude, based on the factors described, that the conditions depicted in the videotape were so dissimilar as to render the videotape irrelevant under OEC 401. "Evidence which is not relevant is not admissible." OEC 402. That being so, the trial court did not err in excluding the videotape.

In summary, the trial court did not err in allowing defendant's expert witness to answer a question about the effect of the highway's design on southbound traffic at the curve where the collision in this case occurred. The trial court also did not err in admitting the same witness' testimony, in the form of an opinion, as to the location of the collision. Finally, the trial court did not err in excluding a videotaped demonstration of the phenomenon of "trailer sweep."

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.